**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 20-cv-3118 |
| v. | ) | |
| | ) | Judge Lefkow |
| ROBERT BARTIK, et al., | ) | |
| | ) | Jury Trial Demanded |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ANTHONY MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 20-cv-3119 |
| v. | ) | |
| | ) | Judge Lefkow |
| ROBERT BARTIK, et al., | ) | |
| | ) | Jury Trial Demanded |
| Defendants. | ) | |

**REPLY IN SUPPORT OF
<u>CITY DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page(s)**

ARGUMENT...................................................................................................................2

I.  The Court May Take Judicial Notice of Plaintiffs' Prior Court
    Proceedings. ......................................................................................................2

II.  Plaintiffs' Complaints Fail to Give the Individual City Defendants
     Fair Notice as Required Under Rule 8. ...........................................................4

III.  Plaintiffs' *Monell* Claims Cannot Survive. ....................................................8

IV.  Plaintiffs' Due Process Claims (Counts II and IV) Fail as a Matter of
     Law.   9

    A.  Plaintiffs' Fabrication Claims (Count II) Are Non-
        Cognizable...................................................................................................10

        1.  Plaintiffs' Fabrication of Evidence Claims Are Premised on
            Coercion and Otherwise Fail to State a Claim. ...................................10

        2.  Plaintiffs' Suppression Claims Fail as a Matter of Law. ...................13

    B.  The Court Should Dismiss Plaintiffs' Wrongful Conviction
        Due Process Claims (Count IV) as a Matter of Law. .....................................15

V.  Plaintiffs' Fourth Amendment Claims (Count III) Should Be
    Dismissed as Untimely. ...................................................................................18

VI.  Plaintiffs' "Involuntary Servitude" Claims (Count V) Are Frivolous. ...................20

VII.  Plaintiffs' Failure to Intervene Claims (Count VII) Cannot Survive. .......................21

VIII.  The Court Should Dismiss Plaintiffs' Conspiracy Claims (Counts
      VII and XI).....................................................................................................22

    A.  Plaintiffs' Federal Law Conspiracy Claims Fail............................................22

        1.  Conspiracy Amongst the Police Officer Defendants ..............................22

        2.  Conspiracy Between the Police Officer Defendants and Shepherd.......25

    B.  Plaintiffs' State Law Conspiracy Claims Fail.................................................26

i

IX.     The State Law Claims of Malicious Prosecution, IIED, and Conspiracy Should Be Dismissed Under the *Hudson* Doctrine. ...............................28

X.      Plaintiffs' Lack of Innocence Bars Their State Law Malicious Prosecution Claims. ...............................................................................31

XI.     Plaintiffs' Claims for Intentional Infliction of Emotional Distress ("IIED") (Count X) Are Time Barred. ............................................32

XII.    Plaintiffs' *Respondeat Superior* and Indemnification Claims Should Be Dismissed. ...............................................................................33

CONCLUSION ...................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alejo v. Heller,*
    328 F.3d 930 (7th Cir. 2003) ....................................................................................... 7

*Angel Rosado v. City of Chi.,*
    17 CV 2210, Dkt. # 70 (N.D. Ill. October 4, 2018) ................................................. 33

*Armstrong v. Daily,*
    786 F.3d 529 (7th Cir. 2015) ............................................................................... 23, 24

*Avery v. City of Milwaukee,*
    847 F.3d 433 (7th Cir. 2017) ..................................................................................... 11

*Bank of Am., N.A. v. Knight,*
    725 F.3d 815 (7th Cir. 2013) ....................................................................................... 8

*Barnett v. Stern,*
    909 F.2d 973 (7th Cir. 1990) ..................................................................................... 28

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................ 4, 6

*Bridewell v. Eberle,*
    730 F.3d. 672 (7th Cir. 2013) ............................................................................... 32, 33

*Brooks v. Ross,*
    578 F.3d 574 (7th Cir. 2009) ................................................................................... 5, 6

*Brown v. City of Chi.,*
    2019 U.S. Dist. LEXIS 174760 (N.D. Ill. Oct. 8, 2019) .................................... 19, 20

*Brown v. City of Chi.,*
    771 F.3d 413 (7th Cir. 2015) ..................................................................................... 30

*Burks v. Raemisch,*
    555 F.3d 592 (7th Cir. 2009) ................................................................................... 5, 6

*Carvajal v. Dominguez,*
    542 F.3d 561 (7th Cir. 2008) ............................................................................... 17, 18

*Clark & Leland Condo., L.L.C. v. Northside Cmty. Bank,*
    110 F. Supp. 3d 866 (N.D. Ill. 2015) ......................................................................... 3

*Colbert v. City of Chi.,*
    851 F.3d 649 (7th Cir. 2017)..................................................................................7

*Dickman v. Cook Cty. State's Attorney,*
    2018 U.S. Dist. LEXIS 43043 (N.D. Ill. Mar. 16, 2018) .......................................26

*Dobbey v. Jeffreys,*
    417 F. Supp. 3d 1103 (N.D. Ill. 2019) ..................................................................25

*Draper v. Rhay,*
    315 F.2d 193 (9th Cir. 1963) ................................................................................21

*Evans ex rel. Evans v. Lederle Labs.,*
    167 F.3d 1106 (7th Cir. 1999)........................................................................28, 29

*Facebook, Inc. v. Teachbook.com LLC,*
    819 F. Supp. 2d 764 (N.D. Ill. 2011) ...................................................................2, 3

*Fulton v. Zalatoris,*
    2008 U.S. Dist. LEXIS 20648 (N.D. Ill. Mar. 12, 2008) .................................29, 30

*Gauger v. Hendle,*
    349 F.3d 354 (7th Cir. 2003), *overruled in part on other grounds, Wallace v.*
    *City of Chi.,* 440 F.3d 421 (7th Cir. 2006) .......................................................13, 14

*Ghiles v. City of Chi. Heights,*
    2016 U.S. Dist. LEXIS 17685 (N.D. Ill. Feb. 12, 2016) ........................................25

*Green v. Florez,*
    2018 U.S. Dist. LEXIS 195412 (N.D. Ill. Nov. 16, 2018) ......................................14

*Haliw v. City of South Elgin,*
    2020 U.S. Dist. LEXIS 47329 (N.D. Ill. Mar. 18, 2020) ...................................23, 24

*Harper v. Albert,*
    400 F.3d 1052 (7th Cir. 2005)..............................................................................22

*Heck v. Humphrey,*
    512 U.S. 477 (1994) ...................................................................................... passim

*Hildebrandt v. Ill. Dep't of Natural Res.,*
    347 F.3d 1014 (7th Cir. 2003)................................................................................7

*Hudson ex rel. Estate of Hudson v. City of Chi.,*
    228 Ill. 2d 462 (2008) ....................................................................................28-30

*Hutchinson ex rel. Baker v. Spink*,
  126 F.3d 895 (7th Cir. 1997) ................................................................21

*Knox v. Curtis*,
  771 F. App'x 656 (7th Cir. 2019) ................................................... 18-20

*Kuhn v. Goodlow*,
  678 F.3d 552 (7th Cir. 2012) ..................................................................7

*Kuri v. City of Chi.*,
  2014 U.S. Dist. LEXIS 3470 (N.D. Ill. Jan. 10, 2014) ...........................7

*Lewis v. City of Chi.*,
  914 F.3d 472 (7th Cir. 2019) ................................................................20

*Logan v. Caterpillar, Inc.*,
  246 F.3d 912 (7th Cir. 2001) ................................................................31

*Lund v. City of Rockford*,
  956 F.3d 938 (7th Cir. 2020) ................................................................32

*Manuel v. City of Joliet*,
  903 F.3d 667 (7th Cir. 2018) ........................................................... 18-20

*McDonough v. Smith*,
  139 S. Ct. 2149 (2019) ..........................................................................19

*Miles v. McNamara*,
  2014 U.S. Dist. LEXIS 31398 (N.D. Ill. Mar. 11, 2014) ................17, 18

*Mission Measurement Corp. v. Blackbaud, Inc.*,
  287 F. Supp. 3d 691 (N.D. Ill. 2017) ...................................................27

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978) ...........................................................................9, 25

*Patrick v. City of Chi.*,
  974 F.3d 824, 835 (7th Cir. 2020) ........................................................14

*Patterson v. Dorrough*,
  2012 U.S. Dist. LEXIS 155642 (N.D. Ill. Oct. 31, 2012) ......................27

*Petty v. City of Chi.*,
  754 F.3d 416 (7th Cir. 2014) ................................................................12

*Phillips v. City of Chi.,*
2018 U.S. Dist. LEXIS 39753 (N.D. Ill. Mar. 12, 2018) ........................................... 14, 15, 17

*Pursley v. City of Rockford,*
2019 U.S. Dist. LEXIS 172602 (N.D. Ill. Oct. 4, 2019) ......................................................... 6

*Rascon v. Hardiman,*
803 F.2d 269 (7th Cir. 1986) ................................................................................................ 7

*Regains v. City of Chi.,*
918 F.3d 529 (7th Cir. 2019) .............................................................................................. 20

*Relf v. Shatayeva,*
998 N.E.2d 18 (Ill. 2013) ...................................................................................................... 5

*Rich v. Baldwin,*
479 N.E.2d 361 (Ill. App. Ct. 1985) ................................................................................... 31

*Rivera v. Lake Cty.,*
974 F. Supp. 2d 1179 (N.D. Ill. 2013) .................................................................................. 7

*Roberts v. Carrington Mortg. Servs., L.L.C.,*
2020 U.S. Dist. LEXIS 209198 (N.D. Ill. Nov. 6, 2020) ....................................................... 4

*Sanchez v. Vill. of Wheeling,*
447 F. Supp. 3d 693 (N.D. Ill. 2020) .................................................................................. 11

*Sanders v. St. Joseph Cty.,*
806 F. App'x 481 (7th Cir. 2020) ........................................................................................ 19

*Savory v. Cannon,*
947 F.3d 409 (7th Cir. 2020) (en banc) ............................................................................. 19

*Scott v. City of Chi.,*
619 F. App'x 548 (7th Cir. 2015) .................................................................................. 24, 25

*Serino v. Hensley,*
735 F.3d 588 (7th Cir. 2013) .............................................................................................. 33

*Sornberger v. City of Knoxville,*
434 F.3d 1006 (7th Cir. 2006) ............................................................................................ 14

*Springs v. Schwarz,*
2017 U.S. Dist. LEXIS 152210 (N.D. Ill. Sept. 9, 2017) ....................................................... 6

*Sterling v. Rockford Mass Transit Dist.,*
    336 Ill. App. 3d 840 (2d Dist. 2003) ...................................................................... 30

*Swick v. Liautaud,*
    169 Ill. 2d 504 (1996) ................................................................................... 31, 32

*Taylor v. City of Chi.,*
    2018 U.S. Dist. LEXIS 145105 (N.D. Ill. Aug. 27, 2018) ..................................... 12

*Taylor v. City of Chi.,*
    80 F. Supp. 3d 817 (N.D. Ill. 2015) ..................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ............................................................................................. 3

*Twin City Fire Ins. Co. v. Law Office of John S. Xydakis, P.C.,*
    407 F. Supp. 3d 771 (N.D. Ill. 2019) ................................................................... 3

*United States v. Earnest,*
    129 F.3d 906 (7th Cir. 1997) .............................................................................. 15

*United States v. Kozminski,*
    487 U.S. 931 (1988) ........................................................................................... 21

*United States v. Walker,*
    746 F.3d 300 (7th Cir. 2014) .............................................................................. 13

*Valdez v. City of Chi.,*
    2020 U.S. Dist. LEXIS 134904 (N.D. Ill. July 30, 2020) ...................................... 8

*Van Slambrouck v. Marshall Field & Co.,*
    98 Ill. App. 3d 485 (1st Dist. 1981) .................................................................... 30

*Williams v. Rodriguez,*
    509 F.3d 392 (7th Cir. 2007) .............................................................................. 33

*WolfLillie v. Sonquist,*
    699 F.2d 864 (7th Cir. 1983) ................................................................................ 8

**STATUTES**

735 ILCS 5/13-217 ........................................................................................... 28, 30

745 ILCS 10/2-109 ................................................................................................ 33

42 U.S.C. § 1983 ........................................................................................... passim

**OTHER AUTHORITIES**

Fed R. Civ. P. 8(a)(2) ........................................................................................... 4

Fed R. Civ. P. 12(b)(6) .............................................................................. 1-3, 33

In their opening brief, the City Defendants identified a series of fatal defects in the Complaints that warrant dismissal at the pleading stage pursuant to Federal Rule 12(b)(6).[1] As demonstrated below, Plaintiffs John Fulton's and Anthony Mitchell's response brief fails to salvage those deficiencies.

When confronted with facts that are a matter of public record – such as the fact that Plaintiffs' petitions for certificates of innocence were denied – they urge this Court to look only to the four corners of the Complaints, ignoring the well-established tenet that courts can take judicial notice of prior court proceedings. Thus, Plaintiffs argue the Court should credit their allegations of "innocence," a legal conclusion alleged 13 times, but ignore the state trial court's rejection of their petitions for innocence based on Mitchell's credible confession to the crime.

But when confronted with gaping holes in their Complaints – such as their failure to allege a *single* action made by five individual current and former members of the Chicago Police Department – Plaintiffs ask this Court to overlook the dearth of actual allegations and simply assume plausible claims.

The Court should see through this gamesmanship and evaluate the sufficiency of Plaintiffs' Complaints as authorized by the Federal Rules.

---

[1] Because this motion is a joint offering from several defendants, this brief and the opening brief filed by the City Defendants exceed the normal page limitations in the name of efficiency and to avoid duplicative paperwork. To the extent the Court deems necessary, the City Defendants respectfully move instanter to permit them to file this brief in excess of the Court's page limitations.

## ARGUMENT

### I.  The Court May Take Judicial Notice of Plaintiffs' Prior Court Proceedings.

Plaintiffs' first argument is a nonstarter, reflecting inexplicable confusion over the well-established concept of judicial notice. (*See* Dkt. 74, Pl. Response at 8-9.) Plaintiffs argue the City Defendants' opening submission "relies on disputed facts that are absent from Plaintiffs' complaints and that are not proper subjects for judicial notice." (*Id.* at 8.) According to Plaintiffs, the City Defendants improperly cited to decisions and records from Plaintiffs' prior court proceedings and then interpreted them in the City Defendants' favor. (*Id.*) Plaintiffs therefore urge the Court to disregard the City Defendants' "alternative set of facts" and limit its inquiry to the allegations asserted in the Complaints. (*Id.* at 8-9.)

But contrary to Plaintiffs' argument, the City Defendants did not rely on "disputed facts" nor did they in any way interpret the prior court proceedings in their favor. Instead, the opening brief simply and accurately recited what transpired in these prior proceedings, which is commonplace and permissible under Rule 12(b)(6). Indeed, in the context of a motion to dismiss, a court may properly take judicial notice of a prior court record if its application to the current proceeding is beyond reasonable dispute and is either generally known within the territorial jurisdiction of the trial court, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 771 (N.D. Ill. 2011). "Matters of public record, such as the contents of court records, can fall within this narrow category of judicially noticeable facts," if the "application of [t]he previous

2

finding to [the] latter proceeding [is] beyond a reasonable dispute." *Id.* at 771-72 (quoting *Gen. Elec. Capital Corp. v. Lease Resolution eCorp.*, 128 F.3d 1074, 1083 (7th Cir. 1997)).

Moreover, the Court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into one for summary judgment. *Clark & Leland Condo., L.L.C. v. Northside Cmty. Bank*, 110 F. Supp. 3d 866, 868 (N.D. Ill. 2015); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (documents that a defendant attaches to a motion to dismiss may be considered if such documents are incorporated into the complaint by reference or are matters of which a court may take judicial notice and are central to the plaintiff's claim); *Twin City Fire Ins. Co. v. Law Office of John S. Xydakis, P.C.*, 407 F. Supp. 3d 771, 775-76 (N.D. Ill. 2019) (court takes judicial notice of documents filed with the state court in cases that formed the basis for the claims) (citing *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) ("judicial notice of public court documents is appropriate when ruling on a Rule 12(b)(6) motion to dismiss")).

Plaintiffs may take issue with the ***outcome*** of those proceedings, but they do not and cannot contest what transpired in them as reflected in the City Defendants' opening brief. Plaintiffs assert the City Defendants rely on "disputed facts" but do not identify ***any*** facts in the brief that are in dispute. And for good reason, because what actually transpired in these prior court proceedings are matters of public record. Thus, regardless of Plaintiffs' allegations, the public record reflects, among other things, (i) that Griffin gave two statements confirming that Fulton demanded that she help him get revenge on Collazo for the gun robbery; (ii) that Judge Flood never concluded or suggested Plaintiffs were innocent in overturning their convictions; and (iii) that Chief Judge Martin denied their

petitions for certificates of innocence, concluding that Mitchell's confession to the crimes was credible. (*See* Dkt. 57, City Defendants' Motion, Exs. A, B, D.)

At bottom, the Court may take judicial notice of the proceedings and exhibits cited in the City Defendants' brief, and the Court should reject Plaintiffs' attempts to thwart a full and fair evaluation of their allegations.

## II. Plaintiffs' Complaints Fail to Give the Individual City Defendants Fair Notice as Required Under Rule 8.

Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" and this statement must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs' Complaints repeatedly and inappropriately group various Individual City Defendants together without differentiation or explanation as to what each person did or did not do, how they were involved in the purported actions giving rise to civil liability, or what they are being thrust into this suit to defend against.

Plaintiffs attempt to evade this basic notice requirement by improperly placing the onus on the City Defendants to explain how the allegations fail to provide notice. (*See* Pl. Response at 11.) Of course, this argument overlooks that it is Plaintiffs' obligation to satisfy Rule 8. *Roberts v. Carrington Mortg. Servs., L.L.C.*, 2020 U.S. Dist. LEXIS 209198, at *13-14 (N.D. Ill. Nov. 6, 2020) ("it is Plaintiff's burden to plead a claim that satisfies Rule 8."). In any event, setting aside that Plaintiffs are asking the City Defendants to fill in the

blanks in their Complaints, the City Defendants argued specifically that Plaintiffs'
Complaints repeatedly and inappropriately group various Individual City Defendants
together without differentiation or explanation as to what each person did or did not do.
(*See* Opening Br. at 11.)

Especially egregious are the allegations against Defendants Girardi, Aguirre, and S.
Franco, who are not referenced ***anywhere*** in the Complaints other than the case caption,
the wherefore clause, and a reference to the mere fact they were police officers. (*See*
Compls. ¶ 11.) Similarly, the only reference to Defendants Cervenka (who is now
deceased)[2] and Kennedy outside of the caption and wherefore clause is the fact that they
happened to be police supervisors. *(Id.* ¶¶ 11-12.) Plaintiffs address this argument in a
mere footnote, asserting without authority that their "approach of alleging misconduct
perpetrated by a defined sub-group of the Defendant officers is entirely proper." (Pl.
Response at 14 n.4.) They further contend the pleading bar is low but cannot cite a single
case authorizing a suit to proceed without ***any*** specific conduct alleged by a particular
defendant. Indeed, it simply cannot be enough to essentially name a defendant as a party,
allege his title, and then assert they were part of a group of defendants who committed
malfeasance.

Plaintiffs argue their pleadings are proper because allegations directed at a group of
defendants are permitted under *Brooks v. Ross,* 578 F.3d 574 (7th Cir. 2009) and *Burks v.*

---

[2] Plaintiffs' suit against him is a nullity. *See Relf v. Shatayeva*, 998 N.E.2d 18, 24 (Ill. 2013) (deceased person is a nonexistent entity and cannot be a party to a lawsuit).

*Raemisch,* 555 F.3d 592 (7th Cir. 2009). (*See* Pl. Response at 10.) These cases, however, actually **undermine** Plaintiffs' position. In *Brooks*, the court found the plaintiff "adequately plead[ ] personal involvement, because **he specifie[d] that he is directing this allegation at all of the defendants**." 578 F.3d at 582 (emphasis added). In this case, Plaintiffs do not specify that their allegations are directed at all Defendants. Moreover, even the *Brooks* court affirmed the district court's partial dismissal of the case under *Twombly* because the plaintiff "often uses this vague phrasing ['one or more of the defendants'], which does not adequately connect specific defendants to illegal acts." 578 F.3d at 580 (citing *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir. 1986) ("An **individual** cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.")). Moreover, the court in *Burks* held that a claim must name the persons allegedly responsible. 555 F.3d at 594. And here, the Complaints fail to do so because they include "other unknown law enforcement officers" in the grouping of "Police Officer Defendants." (Compls. ¶ 11.)

Plaintiffs cite a series of cases they claim adopted "the same 'group pleading' requirement," but, in contrast to the allegations here, these cases involve pleadings that were more specific and sufficiently put defendants on fair notice of each or all of the defendants' specific involvement. *See Pursley v. City of Rockford*, 2019 U.S. Dist. LEXIS 172602, at *13-15 (N.D. Ill. Oct. 4, 2019) (after reviewing the allegations against the specific officers and against all officers, court concludes that "Plaintiff has alleged acts of specific individual defendants in numerous paragraphs of his complaint"); *Springs v. Schwarz,* 2017 U.S. Dist. LEXIS 152210, at *5-6 (N.D. Ill. Sept. 9, 2017) (plaintiff pleaded sufficient

facts in second amended complaint detailing specific allegations against defendant Schwarz to survive motion to dismiss); *Kuri v. City of Chi.*, 2014 U.S. Dist. LEXIS 3470, at *24-25 (N.D. Ill. Jan. 10, 2014) ("The key to satisfying Rule 8 is that Kuri 'put the defendants on notice of what exactly they might have done to violate [his] rights.'") (citing *Brooks*, 578 F.3d at 582); *Rivera v. Lake Cty.*, 974 F. Supp. 2d 1179, 1194-95 (N.D. Ill. 2013) ("many of the Complaint's paragraphs identify specific individuals, and many others refer to identifiable subsets of Defendants."). Here, unlike the cases cited, Plaintiffs have ample access to the information to specify how each individual defendant allegedly wronged them. This is evident from Plaintiffs' response brief, which attempts to save their pleadings by providing additional allegations which are extraneous to the Complaints. (*See* Pl. Response at 13, 14 n.4.)

On the other hand, Plaintiffs failed to address any of the case law set forth in the City Defendants' opening brief establishing that liability under Section 1983 does not attach unless an individual defendant caused or participated in a constitutional deprivation. *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003); *see also Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (individual liability under 42 U.S.C. § 1983 "requires personal involvement in the alleged constitutional deprivation."); *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions"); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) ("an ***individual*** cannot be held liable in a Section 1983 action unless he caused or participated in an alleged constitutional deprivation") (emphasis in original)

(quotation omitted); *WolfLillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault."). "Liability is personal" and "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). "A complaint based on a theory of collective responsibility must be dismissed." *Id*.

Indeed, this Court just recently noted this governing standard for Section 1983 claims:

> To state a claim under 42 U.S.C.§ 1983, Valdez must allege "personal involvement in the alleged constitutional deprivation." *Colbert* v. *City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Minix* v. *Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.*; *see also Iqbal*, 556 U.S. at 676 ("[T]he plaintiff . . . must plead that each Government-official defendant, through his own individual actions, has violated the Constitution."); *Vance* v. *Washington*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

*Valdez v. City of Chi.*, 2020 U.S. Dist. LEXIS 134904, at *6 (N.D. Ill. July 30, 2020). Here, Plaintiffs make allegations against "the Police Officer Defendants," but fail to provide any information as to the personal involvement of each individual sued.

Accordingly, this Court should dismiss Plaintiffs' Complaints because their improper group pleading fails to satisfy Rule 8.

## III.    Plaintiffs' *Monell* Claims Cannot Survive.

As the City Defendants set forth in their opening brief (at 12-13), the City cannot be held liable only for its own constitutional violations, as distinguished from the

misconduct of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Thus because the Court should dismiss with prejudice the claims against the individual City Defendants, it should dismiss the *Monell* claim as well.

Plaintiffs feign confusion over whether the City is asserting that a finding of individual liability is necessary to establish *Monell* liability (Pl. Response at 28), which is a frivolous argument since that is precisely what the City argued. (*See* Opening Br. at 13-14 ("to the extent this Court dismisses Plaintiffs' underlying federal claims against the Individual City Defendants, such a determination would necessarily dispose of Plaintiffs' *Monell* claims."). Moreover, the City Defendants' brief cited authority supporting that exact proposition. (*See id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("neither *Monell* nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when, in fact, the jury has concluded that the officer inflicted no constitutional harm"); *King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("a municipality cannot be found liable if there is no finding that the individual officer is liable on the underlying substantive claim"); *Durkin v. City of Chi.*, 341 F.3d 606, 615 (7th Cir. 2003) (same).)

## IV. Plaintiffs' Due Process Claims (Counts II and IV) Fail As A Matter Of Law.

Plaintiffs' response fails to salvage their due process claims for fabrication of evidence. Count II focuses on the alleged fabrication of false witness statements, while Plaintiffs argue that Count IV is focused "on other evidence Defendants fabricated, suppressed, or conspired . . . to fabricate or suppress." (Pl. Response at 14.) The City Defendants' opening brief explained that Claim II should be dismissed because it is an improper attempt to

9

disguise a claim for coercion of witness statements, which is not a cognizable claim, as a claim for fabrication of evidence. (*See* Opening Br. at 14-19.) The City Defendants' brief also demonstrated that Plaintiffs' due process claim in Count IV fails because it is largely duplicative of Count II, and because the additional allegations of evidence fabrication and destruction are conclusory. (*Id.* at 22-23.)

As discussed below, Plaintiffs' response fails to salvage either of these Counts.

### A. Plaintiffs' Fabrication Claims (Count II) Are Non-Cognizable.

#### 1. Plaintiffs' Fabrication of Evidence Claims Are Premised on Coercion and Otherwise Fail to State a Claim.

Plaintiffs allege in Count II that Defendants deprived them of their "constitutional right to a fair trial and due process by fabricating witness statements implicating Plaintiff[s] in crimes [they] did not commit, which Defendants knew to be false, and by suppressing their own misconduct and the circumstances in which these witness statements were obtained." (Compls. ¶ 146.) Each plaintiff alleges "specifically" that "Defendants used physical violence and psychological abuse to obtain false witness statements" from the other plaintiff, Griffin, and Shaw to implicate him in Colazzo's murder. (*Id.* ¶ 147.) Thus, the Complaints make clear that the alleged fabrication of evidence claims arise from alleged coercion. These claims are not legally cognizable. (*See* Opening Br. at 14-15 (citing cases).)

As to the allegedly fabricated witness statements that form the basis of Count II, Plaintiffs reiterate their allegations that Defendants "coerced witness statements . . . that they knew to be false and concocted themselves." (Pl. Response at 15.) But as the Complaints themselves make clear, these supposed fabrication of evidence claims arise

from allegations of coercion without providing any plausible factual foundation to suggest the Defendants knew the statements were false and or that the statements were otherwise fabricated. Notably, Plaintiffs do not indicate in their Complaints nor do they explain in their response brief what aspects of the witness statements were false or concocted by the Defendants or which falsities were used against Plaintiffs. Indeed, merely describing a coerced statement as "fabricated" cannot make it so.

Plaintiffs argue their allegations are sufficient because they extend beyond coercion, citing cases that are distinguishable. (*See* Pl. Response at 15.) In *Avery v. City of Milwaukee*, the Seventh Circuit merely affirmed the district court's denial of a Rule 59(e) motion where a jury heard evidence and found that the defendant detectives knew their reports regarding a fake confession were false. 847 F.3d 433, 440 (7th Cir. 2017). This decision upholding a jury finding on evidence adduced at trial has no bearing on whether Plaintiffs here have alleged a sufficient factual basis to plausibly conclude that Defendants fabricated evidence.

The other cases cited by Plaintiffs are also unavailing. *See Sanchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693, 701 (N.D. Ill. 2020) (denying motion to dismiss fabrication claims where complaint alleged extensive detail of evidence fabrication, including concocted statements to fed witnesses, coercion of witnesses to alter testimony they had previously given to fit a false narrative created by the officers, and claims that the witnesses had tested positive for gunshot residue based on a test the officers knew to be inaccurate); *Taylor v. City of Chi.*, 2018 U.S. Dist. LEXIS 145105, at *7 (N.D. Ill. Aug. 27, 2018) (denying motion to dismiss where specific allegation "identifies who fabricated the evidence, how

11

the evidence was fabricated, and the content of the fabricated evidence" and was "further bolstered by specific facts demonstrating numerous other instances of evidence fabrication allegedly committed by [the officer in question]").

In contrast, the conduct alleged in Plaintiffs' Complaints does not allege plausible facts that Defendants falsified or created false evidence about the witness statements. Instead, the alleged coercion of witness statements here mirrors cases in which the claims were deemed non-cognizable coercion, not fabrication. *See Petty v. City of Chi.*, 754 F.3d 416, 422-23 (7th Cir. 2014) (rejecting plaintiff's argument that defendant officers knew or should have known that his coerced statements were false simply by the nature of being coerced, where plaintiff did not allege that the officers otherwise created or manufactured any false evidence); *Taylor v. City of Chi.*, 80 F. Supp. 3d 817, 826 (N.D. Ill. 2015) (due process fabrication of evidence claim could not be premised on coercion of witness statements even though plaintiff described the coercion as the officers manufacturing false evidence and statements).

Plaintiffs single out their allegation that Defendant Bartik fabricated a report about Fulton confessing to him "when no such confession . . . was made to Bartik." (Pl. Response at 15 (citing Compls. ¶¶ 51-52).) But even these allegations offer insufficient detail to understand what aspects or portions of Bartik's report were fabricated, how they were fabricated, or any other basis to believe that this report was falsified. Plaintiffs also provide no detail as how this allegedly fabricated confession was used against them at trial. In fact, they assert in their response that they were convicted based on "the coerced confessions of Fulton and Mitchell and the coerced statements of Griffin," as well as the

allegedly suppressed exculpatory evidence, not the report written by Bartik. (Pl. Response at 7.)

### 2. Plaintiffs' Suppression Claims Fail as a Matter of Law.

To the extent Plaintiffs rely on a *Brady* theory of "suppression" of misconduct surrounding these witness statements, such claims also fail as a matter of law. (Compls. ¶ 146.) As a threshold matter, Plaintiffs cannot complain about any alleged suppression of misconduct arising from their own statements because they necessarily knew about them. *See Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003), *overruled in part on other grounds, Wallace v. City of Chi.*, 440 F.3d 421 (7th Cir. 2006).

Plaintiffs respond by mischaracterizing the City Defendants' argument. (Pl. Response at 17.) The City Defendants are not asserting that Plaintiffs have no claim because they knew they were innocent. Instead, they have no claim because they were aware of the actions of which they complain, so there was no suppression. Indeed, the elements of a *Brady* claim require that the information be concealed and not known to Plaintiffs at or before their trial. *United States v. Walker*, 746 F.3d 300, 306 (7th Cir. 2014) ("the evidence is not 'suppressed' if the defendant knew of the evidence and could have obtained it through the exercise of reasonable diligence.").

Of course, regarding Plaintiffs' own allegedly coerced statements, such statements and any coercive tactics used by the Defendant Officers during questioning necessarily were not suppressed because Plaintiffs knew what they had actually said when their statements were taken and knew whether they had been coerced by the Defendant Officers. This parallels the situation in *Gauger*. *See* 349 F.3d at 360 ("the duty to disclose

13

falls out, because [plaintiff] knew what he had said at the interrogation."); *see also Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) (there is no *Brady* obligation to inform accused that her own confession was coerced).

The City Defendants do not argue that *Gauger* precludes *Brady* claims based on the other witness statements—these are precluded on other grounds, as set forth more fully in the City Defendants' opening brief. Instead, Shaw's statement was not used to convict Plaintiffs at trial and thus cannot be the basis of a *Brady* claim. *See Patrick v. City of Chi.*, 974 F.3d 824, 835 (7th Cir. 2020) ("if the fabricated evidence was immaterial, it cannot be said to have caused an unconstitutional conviction and deprivation of liberty"); *Phillips v. City of Chi.*, 2018 U.S. Dist. LEXIS 39753, at *75-76 (N.D. Ill. Mar. 12, 2018) (no due process violation where the materiality of withheld evidence has not been demonstrated); *Green v. Florez*, 2018 U.S. Dist. LEXIS 195412, at *6 (N.D. Ill. Nov. 16, 2018) (in dismissing due process claim, court concluded plaintiff failed to allege facts sufficient to show that "any allegedly fabricated evidence was actually used at trial or otherwise played any role in his conviction at trial."). Plaintiffs fail to address this argument in their response and thus, to the extent they intend to dispute that Shaw's statement can support a *Brady* claim, this argument should be deemed waived.

As for Juanita Griffin's statement, as detailed in the City Defendants' opening brief, the alleged coercion was already known to Plaintiffs during their criminal prosecution and trial. Indeed, as the trial transcripts and order of the appellate court make clear, Griffin's inconsistent statements and the allegations of coercion of her statement by the Defendant Officers were not only known and available to Plaintiffs, they actually raised

and cross-examined on these issues at their criminal trial. (*See* Opening Brief, Ex. E, Trial Tr. at 52-73 (Fulton's defense counsel questioning Griffin about her statements and the detectives' interrogation tactics); Opening Brief, Ex. F, Trial Tr. at 332-33 (prosecutors summarizing defense counsel's argument that Griffin was coerced by the officers); Ex. K, Trial Tr. at 29-41 (Fulton's defense counsel questioning Officer Zalatoris about the interrogation tactics used on Griffin, including threats).)

This prior knowledge alone precludes them from raising a *Brady* claim based on Griffin's statements and any repetitive allegations that her statements were coerced. *See Phillips*, 2018 U.S. Dist. LEXIS 39753, at *72 ("there may be insufficient prejudice to support a *Brady* claim where the defense 'was already aware' of the issue to which the withheld evidence relates and had a 'full opportunity' to raise that issue at trial." (citing *Pruitt v. McAdory*, 337 F.3d 921, 926-27 (7th Cir. 2003)); *United States v. Earnest*, 129 F.3d 906, 910 (7th Cir. 1997) ("[E]vidence is not regarded as suppressed by the government when the defendant has access to the evidence before trial by the exercise of reasonable diligence.").

**B.    The Court Should Dismiss Plaintiffs' Wrongful Conviction Due Process Claims (Count IV) as a Matter of Law.**

The Court should also dismiss with prejudice Count IV, which is largely duplicative of Count II. (*Compare* Compls. ¶ 146 with *id.* ¶¶ 160-62.) Indeed, both Counts accuse the Police Officer Defendants of fabricating witness statements and withholding evidence, depriving Plaintiffs of their right to a fair trial and due process. Thus, to the extent this Count is duplicative of Count II regarding the alleged fabrication of witness statements

15

and suppression of that alleged misconduct, it should be dismissed with prejudice for the same reasons. And as for allegations unique to Count IV, the Court should dismiss the Complaints' bald accusation arising from the alleged destruction of evidence. The problem is there are *no* facts alleged anywhere in the Complaints to plausibly substantiate this allegation.

Plaintiffs respond by pointing to additional evidence identified in their Complaints that was allegedly suppressed. (*See* Pl. Response at 17-18.) For example, they identify allegations that Shepherd, a Cook County State's Attorney's Office investigator, fabricated evidence relating to a camera monitoring the back door to Fulton's apartment building. (*Id.* (citing Compls. ¶¶ 82-86).) But Plaintiffs do not explain how the actions of Shepherd, who was not employed by the City of Chicago or the Chicago Police Department, illustrate any misconduct or suppression of evidence by the City or the Defendant Officers. Indeed, the Complaints contain *no* allegations that any Defendant Officer knew anything about this alleged fabrication by Shepherd. In any event, as the City Defendants explained in their opening brief (at 5-6, 35), the evidence surrounding the existence of the camera was not suppressed from Plaintiffs at their trial. (*See id.*, Ex. B at 2-4 (explaining that Plaintiffs' counsel possessed discovery and should have presented evidence to the jury on the existence of a functioning camera.) This evidence thus cannot provide the basis for a due process violation.

Plaintiffs also claim there was a "clandestine investigative file containing *Brady* material that Defendants withheld from Plaintiffs and prosecutors." (Pl. Response at 17-18.) But there is no mention of a clandestine file in the Complaints. To the extent that

Plaintiffs are possibly referring to their allegations in Paragraph 29 of the Complaints (*See* Compls. ¶ 29 ("Police Officer Defendants gathered information relating to the Collazo murder . . . including a license plate number . . . [that] was exculpatory for Plaintiff")). This assertion is devoid of specificity nor does it explain how the evidence was exculpatory. Such a bald accusation cannot support a *Brady* claim for violation of due process. *See Miles v. McNamara*, 2014 U.S. Dist. LEXIS 31398, at *26 (N.D. Ill. Mar. 11, 2014) (granting motion to dismiss *Brady* claim where the plaintiff's conclusory allegations that allegedly exculpatory evidence would have "absolved Plaintiff of any criminal culpability" were unsubstantiated by any facts); *Phillips*, 2018 U.S. Dist. LEXIS 39753, at *75-76 (no due process violation for withholding evidence, including a lockup log, bond slips, and personnel roster, that was not "critical" to the outcome of the case and was not even shown to be favorable to plaintiffs).

Indeed, there is no explanation in the Complaints or in Plaintiffs' response that indicates why or how the suppression of the information, including a license plate number, would have resulted in any prejudice at Plaintiffs' trial, and thus cannot support a due process claim. *Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008) (*Brady* claim requires a reasonable probability that prejudice ensued due to the suppression of the evidence—"in other words, 'materiality.'"); *Miles*, 2014 U.S. Dist. LEXIS 31398, at *26 (*Brady* claim dismissed where conclusory allegations that exculpatory evidence would have "absolved Plaintiff of any criminal culpability" were unsubstantiated by any facts).

## V.     Plaintiffs' Fourth Amendment Claims (Count III) Should Be Dismissed as Untimely.

Plaintiffs ignore binding Seventh Circuit precedent and urge this Court to inappropriately apply the *Heck v. Humphrey* accrual analysis to their Fourth Amendment claims. But the statute of limitations on Plaintiffs' Fourth Amendment claims has lapsed. As the opening brief details, the Seventh Circuit held that a Fourth Amendment claim challenging a plaintiff's allegedly wrongful pretrial detention accrues when the detention ends. *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) (*Manuel II*). The court rejected an accrual rule that starts from the time of a judicial determination of probable cause and likewise rejected an accrual rule based upon the disposition of criminal charges. *Id.* Instead, the court explained that "[b]ecause the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention. The wrong of detention without probable cause continues for the duration of the detention." *Id.* at 670. Any unlawful detention claim rooted in the Fourth Amendment is time barred because the latest point that it could have accrued was the point of conviction. *See Knox v. Curtis*, 771 F. App'x 656, 658 (7th Cir. 2019) ("[Plaintiff's] claim that he was arrested and detained without probable cause accrued either in August 2017 (when he was released on bond), or in November 2017 (when he was convicted).") (citations omitted).

Plaintiffs urge this Court follow the lead of several non-binding district court decisions despite the binding precedent in *Manuel II*. (Pl. Response at 18-19.) They cite to *Savory v. Cannon*, 947 F.3d 409, 418 (7th Cir. 2020) (en banc), but this decision is of no

consequence here because, unlike the Fourth Amendment pretrial detention claim now at issue, the court in *Savory* addressed the accrual of a Fourteenth Amendment due process claim in light of the plaintiff's conviction and pardon by the governor. Plaintiffs' reliance on *McDonough v. Smith*, 139 S. Ct. 2149 (2019) and *Sanders v. St. Joseph County*, 806 F. App'x 481 (7th Cir. 2020), fails for the same reason. These cases address Fourteenth Amendment due process claims rather than Fourth Amendment pretrial detention claims.

Contrary to Plaintiffs' assertion that the Fourth Amendment claims are subject to delayed accrual under *Heck*, Chief Judge Pallmeyer issued a well-reasoned opinion holding precisely the opposite. In *Brown v. City of Chi.*, 2019 U.S. Dist. LEXIS 174760, at \*2 (N.D. Ill. Oct. 8, 2019), the plaintiff was convicted in 1990 for arson, convicted again in 2008 after a new trial was granted, and then finally had the charges dropped in 2017, after the 2008 conviction was vacated. In 2018, the plaintiff then brought a Fourth Amendment pre-trial detention claim, and the defendants moved to dismiss on statute of limitations grounds. *Id.* at \*2-3. The court ruled that "[w]hile the Seventh Circuit in *Manuel II* held that a claim for pretrial detention without probable cause begins to accrue when the pretrial detention ends, *Knox* clarified that pretrial detention can be considered as ending upon conviction." *Id.* at \*10 (citations omitted). The court held that "any unlawful pretrial detention claim that Plaintiff might have asserted would be time-barred under Seventh Circuit precedent holding that ***such a claim is not subject to the delayed accrual rule from Heck***." *Id.* (emphasis added) (citing *Knox*, 771 F. App'x at 658-59).

19

In any event, to the extent that Plaintiffs are permitted to proceed with a Fourteenth Amendment claim, that claim would necessarily wipe out any Fourth Amendment claim. *Regains v. City of Chi.*, 918 F.3d 529, 536 (7th Cir. 2019) (citing *Lewis v. City of Chi.*, 914 F.3d 472, 475 (7th Cir. 2019)); *see also Brown*, 2019 U.S. Dist. LEXIS 174760, at \*10 (citing *Manuel II* at 670) ("[O]nce a trial has occurred, the Fourth Amendment drops out."). In *Lewis*, the Seventh Circuit clarified that a pre-trial detention in the absence of a conviction is to be challenged under the Fourth Amendment, whereas the Fourteenth Amendment comes into play upon conviction. 914 F.3d at 479. This dovetails with the rationale as to why a Fourth Amendment claim accrues at the time of conviction under *Knox* but also independently requires the dismissal of any Fourth Amendment claim.

Therefore, this Court should dismiss the Fourth Amendment claims as being untimely as set forth by the precedent in *Manuel II*.

## VI. Plaintiffs' "Involuntary Servitude" Claims (Count V) Are Frivolous.

Plaintiffs stick to their guns by asserting the legitimacy of their Involuntary Servitude claims brought under the Thirteenth Amendment in Count V. (*See* Pl. Response at 20-21.) As the City Defendants explained in their opening briefs, such claims are not legally viable when they arise merely from overturned convictions. (*See* Opening Br. at 23-25.) The reason for this is twofold: (i) Plaintiffs do not – and cannot – allege they were subjected to forced labor, i.e., that they were coerced into performing labor through the threat of physical or legal sanction; and (ii) Plaintiffs were duly convicted by the legal process and a valid judgment, and the fact that those convictions were later vacated is

20

legally immaterial for evaluating a claim for involuntary servitude. These principles bar Plaintiffs' claims here.

Notably, Plaintiffs do not cite *any* authority upholding similar allegations under the 13th Amendment. Indeed, if Plaintiffs' claims were viable, they would be able to set forth a plethora of cases recognizing the legal viability of 13th Amendment claims in Section 1983 cases arising from overturned convictions. But they haven't because none exist. Instead, Plaintiffs' case law either stand for tangential propositions that have no bearing on the legal sufficiency of their claims, or actually support dismissal in this case. *See Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 901 (7th Cir. 1997) (*dismissing* Thirteenth Amendment claim brought on behalf of a deceased boy who was taken from his home and placed in a work farm (where he died) "because there is no allegation [he] was coerced into performing labor through the threat of physical or legal sanctions."); *United States v. Kozminski*, 487 U.S. 931, 942-44 (1988) ("By its terms, the Amendment excludes involuntary servitude imposed as legal punishment for a crime" and "[o]ur precedents clearly define a Thirteenth Amendment prohibition of involuntary servitude enforced by the use or threatened use of physical or legal coercion."); *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963) (holding Thirteenth Amendment does not prohibit inmates from working in prison while their convictions are on appeal).

Thus, these claims are legally baseless and should be dismissed with prejudice.

## VII.   Plaintiffs' Failure to Intervene Claims (Count VII) Cannot Survive.

The City Defendants demonstrated that Plaintiffs failed to allege any factual details tying any specific Defendant to any specific constitutional violation. Plaintiffs' failure to

intervene claims allege that "[i]n the manner described above, during the constitutional violations described herein, one or more of the Police Officer Defendants, the Prosecutor Defendants and Defendant Shepherd stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and opportunity to do so" and that "[t]hese Defendants had ample, reasonable opportunities as well as the duty to prevent this harm but failed to do so." (Compls. ¶¶ 174, 175). These barebone conclusory assertions are the epitome of allegations that do nothing more than recite the elements of a claim and are insufficient for a failure to intervene claim to survive. (*See* Pl. Response at 22-23.) The Court should reject those arguments, as discussed above. (*See supra* at 4-8.)

Moreover, Plaintiffs' failure to intervene claims are derivative of their underlying constitutional claims. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Therefore, the Court should dismiss these claims because their underlying claims are not legally cognizable.

## VIII.  The Court Should Dismiss Plaintiffs' Conspiracy Claims (Counts VII and XI).

### A.  Plaintiffs' Federal Law Conspiracy Claims Fail.

In responding to the City Defendants' motion on these claims, Plaintiffs partially mischaracterize the City Defendants' position and otherwise fail to salvage their claims. (*See* Pl. Response at 23-27.)

#### 1.  Conspiracy Amongst the Police Officer Defendants

To review, the Complaints allege that the Police Officer Defendants and Cook County Investigator Shepherd agreed "among themselves to frame [each] Plaintiff for a crime he

did not commit" and "to protect one another from liability." (Compls. ¶ 180.) The City Defendants argued that "*to the extent the Complaints allege the Police Officer Defendants* "agreed among themselves" to frame Plaintiffs and cover up their malfeasance, such claims are barred as a matter of law by the intra-corporate conspiracy doctrine." (*See* Opening Br. at 26 (emphasis added).)

Plaintiffs argue they have not alleged a purely intra-corporate conspiracy because they allege a conspiracy with Shepherd (Pl. Response at 23), ignoring the City Defendants' argued expressly the doctrine bars claims based on the Police Officer Defendants conspiring amongst themselves. And as to those claims, these defendants are entitled to qualified immunity, as "[l]iability is not clearly established for conspiracies amongst police officers of a single municipality because the law is unsettled on whether the intra-corporate conspiracy doctrine applies to § 1983 claims." *Haliw v. City of South Elgin*, 2020 U.S. Dist. LEXIS 47329, at *11-12 (N.D. Ill. Mar. 18, 2020).

Plaintiffs' arguments that *Haliw* is bad law are without merit. First, Plaintiffs contend that *Haliw* – and application of the intra-corporate conspiracy doctrine here – runs afoul of *Armstrong v. Daily*, 786 F.3d 529, 556 (7th Cir. 2015). (*See* Pl. Response at 25-26.) In *Armstrong*, the court rejected an argument by police lab technicians that they were entitled to qualified immunity because the law was not settled whether destroying or withholding exculpatory evidence supports a due process claim by a criminal who has not been tried and convicted. *Id.* In reaching this conclusion, the court concluded the defendants erred by confusing the availability of a remedy (a due process claim) - with whether their actions (destroying evidence) violated a clearly established constitutional

right. *Id.* And the act of destroying exculpatory evidence violated a clearly established constitutional right. *Id.* at 557.

Contrary to Plaintiffs' argument, there is nothing inconsistent between this case and *Haliw* -- and *Armstrong*. The City Defendants are not arguing - nor did *Haliw* hold - that the police officer defendants are immune because Plaintiffs have no remedy. Instead, it is the ***act*** of conspiring, which is the central element of a conspiracy claim, amongst defendants employed by the same municipality that does not violate a clearly established right. Thus, consistent with *Anderson*, the court in *Haliw* correctly concluded that a conspiracy claim premised on individuals within a municipality conspiring does not violate a clearly established right.

Second, Plaintiffs argue the intra-corporate conspiracy doctrine should not apply because, as *Haliw* itself recognized, the rationale of the doctrine may not apply to Section 1983 conspiracy claims because the acts of a municipality's employees are not attributable to the governmental employer, unless the employee happens to be the municipality's final policymaker. (*See* Pl. Response at 26.) But, as Judge Chang observed and held, municipal employees like the City Defendants work for a single entity, and accordingly, courts have applied the doctrine to civil rights claims brought under Sections 1983 and 1985. *See Scott v. City of Chi.*, 619 F. App'x 548, 549 (7th Cir. 2015) (noting that all the defendant officers are public employees, "which means that a conspiracy claim has no role to play"); *Ghiles v. City of Chi. Heights*, 2016 U.S. Dist. LEXIS 17685, at *8 (N.D. Ill. Feb. 12, 2016) (dismissing conspiracy claims brought under Sections 1983 and 1985 as barred by the intra-corporate conspiracy doctrine).

24

Finally, Plaintiffs rely on *Dobbey v. Jeffreys*, 417 F. Supp. 3d 1103 (N.D. Ill. 2019), to argue that the intra-corporate conspiracy doctrine does not apply because they allege a "broad conspiracy within an organization." (*See* Pl. Response at 27.) In *Dobbey*, Judge Gettleman concluded that the doctrine is limited to protect routine business decisions and does not apply to conspiracies that are "'part of some broader discriminatory pattern' or to conspiracies that 'permeate the ranks of the organization's employees." 417 F. Supp. 3d at 1112 (quoting *Glover Hartman v. Bd. of Trs. of Cmty. College Dist. No. 508*, 4 F.3d 465, 470-71 (7th Cir. 1993)).

*Dobbey* is distinguishable for two reasons. First, the court in that case did not consider the issue of qualified immunity, which is the basis of the City Defendants' argument. Second, while Plaintiffs assert in conclusory fashion that their Complaints "fall into the category" of a "widespread pattern," their conspiracy claims concern only the specific conspiracy to frame Plaintiffs for Collazo's murder. (Compls. ¶¶ 179-84.) Indeed, the only "patterns" alleged fall outside the conspiracy count, specifically the standard, boilerplate *Monell* allegations regarding failure to train officers and punish misconduct (*id.* ¶¶ 101-29); Defendant Bartik's alleged improper questioning and use of polygraphs (*id.* ¶ 55); and suppression of exculpatory evidence by the Cook County State's Attorney Office (*id.* ¶ 87). Thus, *Dobbey* has no bearing on this Court's determination.

## 2. Conspiracy Between the Police Officer Defendants and Shepherd.

As the City Defendants explained, Plaintiffs' remaining claim alleging a conspiracy between the Police Officer Defendants and Defendant Shepherd fails because there is a complete dearth of facts alleged to state a plausible claim. (Opening Br. at 28.) Indeed, the

Complaints provide *no* details whatsoever regarding any agreement between the officers and Shepherd, such as when any agreement occurred, what the agreement entailed, or what specific steps were taken in furtherance of any agreement. Because the Complaints provide no information allowing Defendants to prepare their defense or for the court to determine whether Plaintiffs have a tenable theory or basis of suit, this claim should be dismissed. *See Dickman v. Cook Cty. State's Attorney*, 2018 U.S. Dist. LEXIS 43043, at *29 (N.D. Ill. Mar. 16, 2018) ("conclusory statement" that defendants "conspired and combined" together is "devoid of facts upon which a claim for relief can be based") (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)).

Plaintiffs predictably respond that their allegations are sufficient, pointing to their allegations that Shepherd "fabricated inculpatory photographic evidence." (Pl. Response at 24 (citing Compls. ¶¶ 80-86, 94-98, 180-84).) But while the allegations cited by Plaintiffs might state a plausible claim against Shepherd for fabricating evidence, there is not a *single* fact connecting Shepherd and the Police Officer Defendants, which is the conspiracy claim asserted by Plaintiffs. Indeed, permitting Plaintiffs to proceed with such a claim – they essentially slap the term "conspiracy" without any underlying facts, would flout *Iqbal/Twombley* and provide the specified defendants with no notice or guidance as to how they conspired to violate Plaintiffs' rights.

### B.    Plaintiffs' State Law Conspiracy Claims Fail.

The Court should dismiss Plaintiffs' state law conspiracy claims for three reasons. *First*, Plaintiffs' claims are based on underlying causes of action that are not cognizable, for the reasons demonstrated below. *See infra* at 27-33.

26

*Second*, Plaintiffs' state law conspiracy claims suffer the same pleading defects as their federal law claims, as they fail to allege any plausible facts beyond conclusory allegations that would demonstrate that the defendant officers and Shepherd came to any understanding to commit the tortious acts alleged in the Complaints. *See supra* Argument VIII(A)(2).

Third, even if these claims are legally viable, they should be dismissed as duplicative of their other state law claims. *See Patterson v. Dorrough*, 2012 U.S. Dist. LEXIS 155642, at *23 (N.D. Ill. Oct. 31, 2012) (If a plaintiff alleges "a tort as the underlying wrongful act" for a state law conspiracy claim, and the underlying tort is already pled by the plaintiff in the case, the civil conspiracy claim is duplicative). Here, Plaintiffs' state law conspiracy claims do not allege any additional facts or actors than the underlying torts, making them wholly duplicative. *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 725-26 (N.D. Ill. 2017) (claims should be dismissed as duplicative where "Plaintiff fails to allege new facts not already alleged in the underlying tort claims nor seeks to extend liability to additional defendants.").

Plaintiffs acknowledge this principle, but argue their conspiracy claims are not duplicative because they "expand the scope of liability" by holding the Police Officer Defendants and Shepherd legally responsible for acts in which they did not directly participate. (Pl. Response at 34-35.) Of course, that makes no sense because the manner in which Plaintiffs describe expanding liability is simply definitional of a conspiracy claim. Indeed, if Plaintiffs are correct, then no conspiracy claim could ever be deemed duplicative of the underlying torts because such a claim imposes liability on co-

27

conspirators. Tellingly, Plaintiffs cite no cases that support their position; Illinois courts require conspiracy claims to involve additional parties or facts from the underlying tort claims and theirs' do not. (*See* Opening Br. at 29 (citing cases).)

## IX. The State Law Claims of Malicious Prosecution, IIED, and Conspiracy Should Be Dismissed Under the *Hudson* Doctrine.

Plaintiffs seek to avoid dismissal of their state law claims under the Illinois single filing rule of *Hudson ex rel. Estate of Hudson v. City of Chicago*, 228 Ill. 2d 462, 478 (2008), by arguing that federal preclusion rules always apply where the case was previously filed in federal court. (*See* Pl. Response at 29.) Plaintiffs base this argument on *Barnett v. Stern*, 909 F.2d 973, 977 (7th Cir. 1990) which reads that "because the prior action was brought in federal court, federal rules of *res judicata* apply." While Plaintiffs quote this decision accurately, it is taken out of context, ignoring the actual holding of the case that federal *res judicata* rules apply in the context of a previously-filed federal RICO case. As the court explained, "[r]es judicata cannot apply . . . if [the party] would not have had the opportunity to litigate fully his RICO claim. . . ." *Id.* at 978. Thus, *Barnett* is not at odds with the case cited by the City Defendants, *Evans ex rel. Evans v. Lederle Labs.*, 167 F.3d 1106, 1112 (7th Cir. 1999), which applied Illinois *res judicata* rules in federal court. *Id.*

Notably, Plaintiffs' response ignores *Evans*, a case which contradicts their assertion that federal *res judicata* precedent applies here. In *Evans*, the plaintiffs simultaneously filed a vaccine injury claim against a vaccine manufacturer in the Federal Court of Claims under the national vaccine injury program, as well as a state law negligence action in federal district court predicated on diversity jurisdiction. *Id.* at 1108. After the Court of

28

Claims dismissed the statutory action, the district court dismissed the negligence case under Illinois's single filing rule. *Id.* The Seventh Circuit affirmed, concluding that "[r]egardless of the forum, Illinois permits a plaintiff just two bites at the apple." *Id.* at 1112. Thus, the *Hudson* doctrine strictly applying the single filing rule and the one-year statute of limitations for re-filing under 735 ILCS 5/13-217 bar the state law claims brought in federal court.

Under Illinois law, "if there is an adjudication on the merits of one claim in a case, this determination will have *res judicata* effect on the filing of any other claims that could have been raised and determined in the first case." *Hudson*, 228 Ill. 2d at 478. Plaintiffs do not, and cannot, dispute that the operative facts from case number 05-cv-01551 ("*Fulton/Mitchell I*"), case number 07-cv-05569 ("*Fulton/Mitchell II*"), and this case ("*Fulton/Mitchell III*") are the same. (*See* Pl. Response at 29) ("Fulton and Mitchell filed their first lawsuit concerning the framing for the Collazo murder in 2005. . ."). Thus, the *res judicata* requirements of identity of parties and issues are easily satisfied.

Regarding the final *res judicata* requirement—adjudication on the merits—Plaintiffs argue that their prior lawsuits do not qualify because aspects of their claims were *Heck* barred. (Pl. Response at 29.) But this argument fails because Judge Darrah in *Fulton/Mitchell II* ruled that the false arrest claims were not *Heck* barred. *See Fulton v. Zalatoris*, 2008 U.S. Dist. LEXIS 20648, at *9 (N.D. Ill. Mar. 12, 2008) ("Plaintiffs' claim for false arrest is not barred by *Heck*.").

It was Plaintiffs who voluntarily dismissed their cases in their two prior lawsuits. In *Fulton/Mitchell I,* Plaintiffs voluntarily dismissed their claims against ASA Rubenstein

29

with prejudice on October 4, 2006, and the remainder of the case against Detectives Zalatoris, Breen, Struck, Girardi, and Winstead without prejudice on October 11, 2006. After refiling essentially the same case in *Fulton/Mitchell II*, Plaintiffs again voluntarily dismissed their case on February 21, 2012, (07-cv-05569, Dkt. ##94, 96), only to now bring a third version of the same lawsuit. The dismissal of ASA Rubenstein from *Fulton/Mitchell I* with prejudice operates as an adjudication on the merits. *See Van Slambrouck v. Marshall Field & Co.*, 98 Ill. App. 3d 485, 487 (1st Dist. 1981) ("A dismissal with prejudice is tantamount to an adjudication on the merits.").[3]

The City Defendants cited *Brown v. City of Chi.*, 771 F.3d, 415-16 (7th Cir. 2015), for the proposition that "a voluntary dismissal *is res judicata* if other claims in the dismissed suit had been dismissed on the merits" but Plaintiffs fail to address this case in their response. Similarly, Plaintiffs fail to address the fact that 735 ILCS 5/13-217 required the re-filing of their state law claims within one year of the voluntary dismissal of their previous cases. For these reasons, the state law claims of malicious prosecution, IIED, and conspiracy should be dismissed with prejudice.

---

[3] Although the court in *Sterling v. Rockford Mass Transit Dist.*, 336 Ill. App. 3d 840, 850 (2d Dist. 2003), held that the voluntary dismissal of an employee in a *respondeat superior* action does not qualify as an adjudication on the merits for purposes of *res judicata*, this holding issued before the Illinois Supreme Court announced its ruling in *Hudson*. In addition, in *Sterling*, the plaintiff brought a wrongful death action against the employer of a driver who rammed a bus into a restaurant and thereby killed the decedent. Because the claim against the dismissed employee duplicated the still pending *respondeat superior* claim against the employer, the dismissal of the employee was immaterial. In light of the Illinois Supreme Court's clear directive in *Hudson* that multiple filings are not to be permitted, the dismissal of ASA Rubenstein with prejudice and the two prior voluntary dismissals bar the current state law claims.

**X.**     **Plaintiffs' Lack of Innocence Bars Their State Law Malicious Prosecution Claims.**

Because the *nolle prosequi* orders vacating Plaintiffs' convictions were not entered for reasons consistent with Plaintiffs' innocence, their malicious prosecution claims are not cognizable. As noted in the City Defendants' opening brief, to prevail on a malicious prosecution claim, a plaintiff must prove that the proceeding terminated in his favor in a manner indicative of innocence. *Swick v. Liautaud*, 169 Ill. 2d 504, 514 (1996); *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921-22 (7th Cir. 2001).

Plaintiffs argue that neither an acknowledgement of innocence from the state nor a finding of innocence by a court or jury is required for a criminal proceeding to be indicative of innocence. (Pl. Response at 31.) In support, Plaintiffs provide a general citation to *Rich v. Baldwin,* 479 N.E.2d 361, 362 (Ill. App. 1985), a case in which an ***acquittal*** qualified as a favorable termination indicative of innocence. Of course, that dd not occur here; the bare entry of the *nolle prosequi* is not tantamount to acquittal.

Indeed, Plaintiffs fail to address the ruling in *Swick* that a bare *nolle prosequi* is insufficient to show that the termination of criminal proceedings was indicative of innocence because "[o]therwise, every time criminal charges are nol-prossed a civil malicious prosecution action could result." 169 Ill. 2d at 514. "For purposes of a malicious prosecution action, the plaintiff has the burden to prove that the *nolle prosequi* was entered for reasons related to his innocence." *Lund v. City of Rockford*, 956 F.3d 938, 949 (7th Cir. 2020).

Moreover, Plaintiffs ignore that Judge Flood expressly stated on the record that the convictions were vacated without any "conclusions regarding the guilt or innocence of petitioners." (*See* Opening Brief, Ex. B at 2-3.) Hoping to avoid this fact, which is fatal to their malicious prosecution claims, Plaintiffs attempt to inject facts which are not in their Complaints and argue that "an assistant state's attorney conceded when dropping the charges against Plaintiffs that the state would not be able to meet its burden at trial." (Pl. Response at 32.) That assertion is unsubstantiated, absent from the Complaints, and, regardless, legally immaterial. The fact remains that Judge Flood dismissed their criminal charges in a manner ***not*** indicative of their innocence.

Therefore, because the Complaints fail to plausibly plead the essential element of termination indicative of innocence, the malicious prosecution claim should be dismissed.

**XI.  Plaintiffs' Claims for Intentional Infliction of Emotional Distress ("IIED") (Count X) Are Time Barred.**

After acknowledging that *Bridewell v. Eberle*, 730 F.3d. 672, 678 (7th Cir. 2013) would require dismissal of the IIED claims on statute of limitations grounds, Plaintiffs argue its holding should be disregarded because there is a split in authority within this circuit. But this Court in *Angel Rosado v. City of Chicago* rejected just such an argument and should follow its prior reasoning here. In *Rosado*, the Court held:

> "[A] claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). [Plaintiff] argues that the IIED claim should be considered a continuing tort in this circumstance; accordingly, the statute did not run until [plaintiff] was released from custody on June 23, 2016. But the Seventh Circuit addressed and dismissed this very argument

in *Bridewell*. *Id*. at 678 ("The idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either."). Count 8 is dismissed.

*Rosado v. City of Chi.*, 17 CV 2210, Dkt. # 70 (N.D. Ill. October 4, 2018), attached hereto as Ex. L.

Therefore, because Plaintiffs were charged in 2003, these claims should be dismissed as untimely.

## XII.    Plaintiffs' *Respondeat Superior* and Indemnification Claims Should Be Dismissed.

Finally, the Court should dismiss Plaintiffs' *respondeat superior* and statutory indemnification claims because the claims advanced against the Individual City Defendants are not cognizable. *Williams v. Rodriguez*, 509 F.3d 392, 405-06 (7th Cir. 2007); 745 ILCS 10/2-109 (2010) ("A local public entity is not liable for an injury resulting from an act or mission of its employee where the employee is not liable."); *Serino v. Hensley*, 735 F.3d 588, 596 n.7 (7th Cir. 2013) (dismissing *respondeat superior* claim where underlying claims were dismissed).

Plaintiffs respond that these claims should survive because their underlying claims are cognizable (Pl. Response at 35), which the Court should reject for all of the reasons set forth above.

## CONCLUSION

For the foregoing reasons and those set forth in the City Defendants' opening submission, the Court should dismiss Plaintiffs' Complaints with prejudice pursuant to Rule 12(b)(6).

Dated November 25, 2020                    Respectfully submitted,

| | |
|---|---|
| s/ Shneur Nathan (Att. #6294495)<br>Shneur Nathan (snathan@nklawllp.com)<br>Avi Kamionski<br>(akamionski@nklawllp.com)<br>Grzegorz Labuz (glabuz@nklawllp.com)<br>Nathan & Kamionski LLP<br>Special Assistants Corporation Counsel<br>33 W. Monroe, Suite 1830<br>Chicago, IL 60603<br>(312) 612-1955 Direct<br><br><br>*Attorneys for Individual City Defendants* | Mark Flessner<br>Corporation Counsel for the City of Chicago<br><br>s/ Michael D. Bess<br>Michael D. Bess<br>(mdbess@michaelbest.com)<br>Michael Best & Freidrich LLP<br>Special Assistant Corporation Counsel |

## Certificate of Service

I, the undersigned attorney, hereby certify that I caused the foregoing document to be filed with the Court's CM/ECF system, which provided electronic notice and a copy of the same to all counsel of record.

/s/ Michael D. Bess