IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FULTON, | ) | Case No. 20-cv-3118 |
| | ) | |
| Plaintiff, | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| v. | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, et al., | ) | Magistrate Judge |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | Case No. 20-cv-3119 |
| | ) | |
| Plaintiff, | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| v. | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, et al., | ) | Magistrate Judge |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**MOTION TO EXCLUDE
PLAINTIFF'S POLYGRAPH EXPERT DANIEL SOSNOWSKI**

Now Comes Defendants Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Stephen Franko, and Robert Girardi ("Individual City Defendants"), for their motion to exclude the opinion testimony of Plaintiff's polygraph expert Daniel Sosnowski pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, and in support of their motion, Individual City Defendants state as follows:

**INTRODUCTION**

Plaintiffs John Fulton and Anthony Mitchell filed their respective lawsuits under 42 U.S.C. § 1983 alleging violations of their constitutional rights stemming from their prosecutions and convictions for the murder of Christopher Collazo. Plaintiffs allege that they were prosecuted

1

without probable cause and framed for Collazo's murder through fabricated statements. Plaintiffs allege that, in furtherance of this alleged framing, "Defendants chose to bolster the fabricated false confessions they had coerced from Fulton by fabricating an additional false confession that he never gave." (Fulton Dkt. 1 ¶ 51; Mitchell Dkt. 1 ¶ 51.) According to Plaintiffs, Fulton "ostensibly" gave this second, allegedly fabricated, confession to Defendant Bartik, a police officer and polygraph examiner, while Bartik was preparing to perform a polygraph examination of Fulton. (*Id.* ¶¶ 51–52; *Id.* ¶¶ 51–52.) Plaintiffs theorize instead that Fulton's second confession never happened; that Defendant Bartik made it up. (*Id.*; *Id.*). In fact, Fulton himself is adamant that his interaction with Defendant Bartik was limited to introductions and Bartik explaining to Fulton that the polygraph was a voluntary process. In Fulton's own sworn testimony:

> Q. So Bartik introduced himself and said, this a voluntary process. And then what happened?
> A. He under—he asked me did I understand what I was doing there. He told me that I had to sign a form before the test could be administered. He placed the form in front of my face. At that point, him, Zalatoris, and Breen stepped out the room. I signed the form. And a little while later, maybe like five or ten minutes later, could have been longer, not too long, they entered back into the room, and Zalatoris or Breen said, it's not going to hold up in court; let's go.
> ….
> Q. Other than Bartik introducing himself and saying that this is a voluntary process and giving you the form to sign, do you remember him saying anything else?
> A. No.
> Q. Did he ever yell at you?
> A. No.
> Q. Did he even threaten you?
> A. No.
> Q. Ever promise you anything?
> A. No.
> Q. About how long total would you say you were with Bartik?
> A. Maybe 10, 15 minutes.

(*See*, *Deposition Transcript of John Fulton*, attached as Exhibit A at 198:13–199:24) What is certain is that, according to Fulton, neither a pre-test interview nor a polygraph examination ever occurred. (*Id.*; *Id.*)

2

Nevertheless, Plaintiffs have retained and disclosed Daniel Sosnowski to opine as a purported expert in the administration and interpretation of polygraph examinations. (*See*, *Daniel Sosnowski Expert Report*, attached as Exhibit B at 1). The Court should exclude Sosnowski's testimony at trial entirely as he is not qualified to offer any opinions regarding confessions and his opinion is irrelevant because Plaintiff never took a polygraph and even Fulton himself does not allege Bartik made any attempt to even interview him about the incident. As such, Sosnowski's expertise in polygraph administration will not aid the jury in understanding confessions and will not help the determine whether Bartik fabricated Fulton's second confession. Sosnowski relies on insufficient facts and data, and he employs the unreliable methodology of comparing out-of-court statements to his own experience as a polygraph examiner and gossip he heard at a convention. Bartik claims Fulton confessed and Fulton claims Bartik never questioned him. Either the jury believes Bartik or Fulton. Sosnowski simply does not aid the jury in deciding this factual dispute. As such, the Court should exclude Sosnowski from testifying.

## BASES, METHODOLGY, AND OPINIONS

Sosnowski's report details the bases of his opinions, his methodology, and his opinions. *See* Ex. B. The data on which Sosnowski bases his opinions is a) prior testimony of Detectives Bartik, Zalatoris, and Breen; b) a review of "148 files in which Mr. Bartik reported that he did not conduct an examination between 1999 and 2002"; and gossip with 85 other examiners at a Florida Polygraph Association conference in June 2006. (*Id.* at 2, 4, 5.) Sosnowski's methodology was to utilize his "years of experience," including having conducted "30,000" polygraph exams, to "look to see the ways Mr. Bartik's testimony about his actions comports with or deviates from standard polygraph procedure." (*Id.*) Sosnowski offers unsupported and unreliable opinions throughout his report including:

3

1. *Mr. Bartik failed to learn any information from Mr. Fulton regarding his overall background during the pretest interview which was relevant to Mr. Fulton ... This information would be critical for any polygraph examiner to learn because the amount of time in custody, as well as factors pertaining to fatigue, are what we are training to assess…*

2. *[P]olygraph examiners are taught in basic polygraph training to take notes during the entire pre-test interview… However, Mr. Bartik stated that he did not take any type of notes regarding the pre-test interview of Mr. Fulton[, including his age].*

3. *It is imperative that age of the person who taking the exam be established ... Particularly in the case of Mr. Fulton, who was 18 at the time he was examined, it would have been especially pertinent to record his age to establish his suitability for polygraph examination.*

4. *Mr. Bartik has a history of obtaining admissions and confessions of major crimes during a short amount of time spent in the pre-test interview… [79 confessions] is an astounding number that far exceeds the number of expected pre-test interview confessions… The entire purpose of the pre-test interview is to ensure that the subject is not anxious about the test procedure ... Accordingly, it is extremely rare to receive a confession to a serious felony case (let alone a homicide) during the pre-test interview. Obtaining over 80 confessions in a three-year period is beyond the realm of the number of pre-test confessions that an examiner could obtain by conducting pre-test interviews in the manner in which examiners are trained.*

5. *I have personally conducted over 30,000 polygraph examinations and it is extremely rare for someone to confess to the crime that is under investigation during the pretest interview.*

6. *Accordingly, it is my professional opinion that Mr. Bartik is either fabricating confessions or using accusatory interrogation techniques during the pretest interview; given the frequency that Mr. Bartik obtained statements during the pretest interview. I cannot say which is true or more likely; but I can state with a very high level of confidence that Mr. Bartik could not have obtained that many pre-test confessions if he had conducted the pre-test interview in the way it is supposed to be done.*

7. *If Mr. Fulton had confessed, I would expect that the polygraph examiner would have ensured that the investigating detectives knew not only that the confession had occurred, but also all of the details provided in the confession, so that the detectives could continue their investigation armed with the facts. It would be the polygrapher's duty to ensure the detectives knew about the confession and the facts related in the confession. If Mr. Bartik did not inform the detectives that Mr. Fulton had confessed, this would be a stark deviation from basic polygraph standards.*

4

Sosnowski's report also contains the hearsay opinion(s) of 85 examiners attending the June 2006 Florida Polygraph Association conference that "someone making an admission of guilty was extremely rare during the pretest interview itself."[1] (*Id.* at 4.) From these opinions, Sosnowski concludes that "the interview of Mr. Fulton was not conducted in a fair and ethical manner." (*Id.* at 5.) This makes no sense, because Fulton himself contends he was never interviewed. Sosnowski reiterates that his "opinion is strongly based on [his] experience in conducting over 30,000 interviews and polygraph exams of individuals in a variety of cases." (*Id.*) Plaintiffs will seek to introduce these opinions and this conclusion in support of their theory that Bartik fabricated Fulton's second confession as part of the greater effort to frame Plaintiffs. (Fulton Dkt. ¶¶ 51–55; Mitchell Dkt. 1 ¶¶ 51–55.)

## STANDARD OF LAW

The admission of expert witness opinion testimony is governed by Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Kluppelberg v. Burge*, No. 13 C 3963, 2016 WL 6821138, at *1 (N.D. Ill. Sept. 16, 2016) (J. Lefkow). Under Rule 702, the proponent of an expert witness must demonstrate that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702.[2] Through Rule 702, the Court must ensure that expert testimony is

---

[1] To the extent the Court denies this motion, it should nonetheless exclude this hearsay opinion as it is an out of court statement (or rather 85 statements) offered for the truth of the matter asserted. Fed. R. Evid. 401.

[2] Recent amendments to Rule 702 were intended to correct the misunderstanding "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." *Brown v. City of Chicago*, No. 19 CV 4082, 2024 WL 3791634, at *1 (N.D. Ill. Aug. 13, 2024) (J.

both relevant and reliable. *Daubert*, 509 U.S. at 597. An expert's proposed testimony is relevant when it helps the factfinder "understand the evidence" or "determine a fact in issue." *Daubert*, 509 U.S. at 591. To determine whether proposed expert testimony is reliable, the Court focuses "on the expert's methodology, not his ultimate conclusions." *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019). Courts consider four factors when assessing the reliability of an expert's methodology, including: (1) whether the theory is based on scientific or other specialized knowledge that has been or can be tested; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error and the existence of standards controlling the theory's operation; and (4) the extent to which the theory is generally accepted in the relevant community. *Kluppelberg*, 2016 WL 6821138, at *1 (citing *Daubert*, 509 U.S. at 593–94, and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)). These factors, however, are not a definitive checklist or test, and the importance of different factors will vary based on the particular circumstances of the particular case at issue. *Id*. The objective is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.*

**ARGUMENT**

The Court must exclude Plaintiff's polygraph expert Sosnowski because his testimony is irrelevant and unreliable. Sosnowski's specialized knowledge of polygraphs is irrelevant because it does nothing to help the trier of fact to understand the evidence or determine a fact in issue. His opinions on a polygraph that never occurred do not assist the jury in understanding fabricated confessions or in determining whether Fulton's second confession was a fabrication. Furthermore,

---

Jenkins) (citing Fed. R. Evid. 702 Advisory Committee Notes to 2023 Amendments). The amendments do not, however, impose any new, specific procedures or change Rule 702's substantive standards. *Id.*

6

Sosnowski's experience, Defendants' prior testimony, a review of 148 unrelated files, and gossip at a polygraph examiner's conference are insufficient facts or data to establish the reliability of his opinions. Finally, Sosnowski applies no principles or methods, let alone reliable ones, in reaching his conclusions. Sosnowski's method—interpreting testimony and unrelated case files—is nothing more than his hot-take on limited prior testimony of Defendants and a regurgitation of polygrapher conference gossip on the frequency of confessions prior to polygraph examinations. Because Sosnowski's testimony is both irrelevant and unreliable, the Court should exclude Sosnowski from testifying. *Daubert*, 509 U.S. at 597.

## I. Sosnowski is Useless to the Jury in Understanding Confessions and in Determining Whether Bartik Fabricated Fulton's Second Confession.

Sosknowski's testimony and opinions based on his experience of conducting 30,000 polygraph examinations—which itself is unbelievable—add nothing but prejudice to the Individual City Defendants and confusion of the evidence and facts in issue. As such, Plaintiffs cannot meet their burden in establishing that Sosnowski's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue. Fed. R. Evid. 702.

Plaintiffs will offer Sosnowski's testimony to advance their theory that Bartik fabricated a second confession from Fulton. Sosnowski's testimony, in summary, would be (a) Bartik did not take notes did not learn any information, including age, from Plaintiff Fulton in deviation of standard polygraph procedure; further, (b) Bartik obtained pre-test interview confessions at an unexpected rate; and therefore (c) Bartik was "either fabricating confessions or using accusatory interrogation techniques during the pretest interview," and (d) "the interview of Mr. Fulton was not conducted in a fair and ethical manner." (Ex A. at 2–5.) He also hypothetically suggests, it

7

"would be a stark deviation," if Bartik did not inform the other detectives of the confession, but does not conclude that was the case. (*Id.* at 5.)

Sosnowski is worthless to the jury in understanding the evidence surrounding the alleged fabricated confession and in determining whether Bartik fabricated Fulton's second confession. He informs nothing regarding confessions in general; coerced and/or fabricated confession specifically; the contents or timing of Fulton's confessions; the fact it was Fulton's second confession; Bartik's or the other Detectives motives in the alleged fabrication; or anything else that might aid the jury in understanding fabricated confessions or determining the facts surrounding the allegedly fabricated confession here. Indeed, Sosnowski is an expert "in the administration and interpretation of polygraph examinations," and not in confessions, interrogation techniques, police misconduct, or any other relevant field. Instead, Sosnowski opines on a polygraph examination that Fulton himself says never occurred; the frequency of confessions during the pre-interview of a polygraph examination; and where Bartik deviated from proper polygraph procedure during the non-existent examination.

Sosnowski's opinions on the extent to which Bartik complied or deviated from standard polygraph procedures are irrelevant because Fulton himself contends that he was never questioned by Bartik about the incident and that no polygraph took place. Therefore, the jury need not understand evidence relating to polygraph examinations or pre-test procedures. The question is whether or not the confession was fabricated, and not whether confessing before a polygraph is unusual or whether Bartik followed polygraph procedure on an examination that never occurred. (Fulton Dkt. 1 ¶ 52; Mitchell Dkt. 1 ¶ 52) ("This supposed 'confession' was entirely fabricated by Defendant Bartik.") Furthermore, there are no allegations that Bartik did not comply with the standard operating procedures for polygraph exams or that Plaintiff's rights were violated in some

8

way by a constitutionally inadequate polygraph exam. Simply put, the manner in which Bartik conducted the polygraph exam is inconsequential to whether he fabricated Fulton's second confession and does not at all help the jury understand confessions, fabricated or otherwise.

Sosnowski's opinions on the infrequency of such confessions and the frequency with which Bartik obtained them are equally useless to the jury. Such anecdotal opinions do not aid the jury in understanding evidence pertaining to whether Bartik fabricated the alleged confession here. Instead, they are crafted to divert the jury's attention from the evidence in this case to unrelated and inapposite cases and evidence, thereby distracting and confusing—rather than aiding in understanding—the evidence here. Plaintiffs will say that this evidence is relevant because Bartik has falsely claimed that a suspect spontaneously confessed to him during preparation for a polygraph exam and that he has a pattern of misconduct related to the improper and unconstitutional questioning of criminal suspects. (*Id.* ¶ 55; *Id.* ¶ 55.) However, Sosnowski's opinions on the frequency of confessions in the pretest interview and the rate at which Bartik obtain them are nothing more than impermissible propensity evidence and are excludable under Rules 403 and 404(b) of the Federal Rules of Evidence. *See Harris v. City of Chicago*, No. 14 C 4391, 2018 WL 2183992, at *17 (N.D. Ill. May 11, 2018) (J. St. Eve) (denying new trial and reasserting Rule 404(b) ruling excluding evidence of the same Detective Bartik's prior conduct relating to similar allegations of coerced and fabricated confessions against Bartik); *see also Grant v. City of Chicago*, No. 04 C 2612, 2006 WL 8460591, at *7 (N.D. Ill. Aug. 4, 2006) (J. Lefkow) (excluding argument and evidence of a propensity to commit bad acts because the probative value of such evidence would be substantially outweighed by its prejudice.)

Such opinions will also not aid the jury in determining whether Bartik fabricated Fulton's second confession. Sosnowski reports he determined Bartik had obtained 80 confessions from 148

9

"files in which Mr. Bartik reported that he did not conduct an examination." But Sosnowski's testimony shows the incompleteness of his review and the lack of consistency between those unidentified files and this case. (*See*, *Deposition Transcript of Robert Sosnowski*, attached as Exhibit C.) Sosnowski testified he did not know how many of those 80 recanted their confessions (Ex. C at 98:1–11); he did not know how many denied confessing (*id.* at 98:12–16); how many led to convictions (*id.* at 98:17–19); or how many led to reversals (*id.*). But when conducting a comparative analysis, "care must be taken to be sure that the comparison is one between 'apples and apples' rather than one between 'apples and oranges.'" *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005), *amended*, No. 01 C 9389, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005) (excluding comparative analysis evidence because "the samples were not fair congeners[, and therefore] the comparison is manifestly unreliable and cannot logically advance a material aspect of the proposing party's case.") (cleaned up). Sosnowski's comparisons are apples to broccoli; the cases are not even in the same category. Additionally, Sosnowski provides no baseline for comparison of the number of confessions Bartik obtained. When asked about the expected number of pretest interviews, Sosnowski fumbles, "we just don't expect any, but I guess it does happen from time to time, but it's rare… less than one percent—even if it's that." (Ex. C at 99:7–10.) Sosnowski does not even draw a firm conclusion in this regard. In his own words, "Bartik is *either* fabricating confessions *or* using accusatory interrogation techniques…I cannot say which is true or more likely." (Ex. B at 5 (emphasis added).) Accusatory interrogations techniques, which one would expect during a polygraph, are not inherently unconstitutional. *See, e.g.*, *Dassey v. Dittmann*, 877 F.3d 297, 321 (7th Cir. 2017) (in case in which Sosnowski offered expert testimony, discussing boundaries of when accusatory questioning becomes psychological coercion that can render a confession involuntary and

unconstitutional.) Yet, Sosnowski provides no further explanation of this innocuous alternative and does not rule it out in anyway. Neither his opinion, nor the 80 cases he cites make it more or less likely that Bartik fabricated Fulton's second confession.

Sosnowski's specialized knowledge of polygraph examination will not help the jury understand the evidence or in determining any fact in issue because Fulton never took a polygraph. Any opinions Sosnowski offers regarding Bartik and polygraph examinations is therefore inadmissible under Rule 702 and the Court should exclude him from testifying. Fed. R. Evid. 702.

II. **Sosnowski Opines on Gossip and an Incomplete Record, Not Facts or Data.**

Sosnowski's testimony is not based on fact and data; it is based on the out-of-court statements of others, specifically, limited prior testimony of the Individual City Defendants, 148 files, and gossip of an untold number of unidentified examiners in attendance at the June 2006 Florida Polygraph Association conference. As such, Plaintiff also cannot meet their burden is establishing that Sosnowski's the testimony is based on sufficient facts or data.

Rule 702 requires the proponent of an expert witness to show that the testimony is based off "sufficient facts and data." Expert opinions are worthless without data and reasons. *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (noting it is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support). In *Mamah*, the Seventh Circuit affirmed exclusion of two proposed experts' testimony that the defendant likely gave a false confession because there was an "absence of an empirical link between that research and the opinion that [the defendant] likely gave a false confession." *Id.* The Court reasoned that one expert had "no basis for extrapolating" their general conclusion to the specifics of the case, and that the other expert "could not connect his research to the particulars of [the] case." *Id.* The Seventh Circuit later echoed this, writing: "the

11

entirety of an expert's testimony cannot be the mere repetition of the out-of-court statements of others. An expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy." *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014) (cleaned up).

Sosnowski bases his opinions and conclusions on Defendants' prior testimony, a review of 148 unrelated files, and gossip at the June 2006 Florida Polygraph Association conference. Sosnowski confirms he consulted no other information or outside sources and specially notes that he did not use the American Polygraph Association guidelines in forming his opinion. (Ex. C at 68:7–13; 82:11–14). In no way are these sufficient facts or data to establish the reliability of his opinions. Sosnowski's report is sparse on data. Sosnowski reviewed 148 unrelated cases, concluding that in 80 of those cases, "Mr. Bartik reported that he obtained confessions." (Ex. B at 4). The numbers and analysis stop there. Sosnowski provides no further explanation regarding the particulars of any of those cases. Sosnowski is similarly silent as to the allegedly fabricated confession here, noting only that Sosnowski did not fill the form out properly. Just as in *Mamah,* Sosnowski's testimony draws no empirical link between the unrelated cases provided by Plaintiffs and the alleged fabricated confession. Unlike *Mamah*—where the experts utilized their own independent research—Sosnowski parrots the cases Plaintiff's asked him to review, extrapolating "a history of obtaining admissions and confessions," and concluding the confession here must be a fabrication. His reasoning: he and the June 2006 Florida Polygraph Association conference said so. This is not expert testimony.

The sole other data point Sosnowski cites is his experience in conducting 30,000 polygraphs over 40 years. Sosnowski's testimony in this regard reveals how he plays loose with the numbers. He notes he would give as many as five polygraph examinations a day during this

12

time period. (Ex. C at 15:10–11). However, he testified he did not keep a log or know of any other history to corroborate his estimate of "800, 900, 1,000 tests a year." (*Id.* at 19:3–5; 44:14) He also admitted its "just a guess based on [his] memory." (*Id.* at 21:16–20). This estimate fails basic math as 30,000/40 = 750. Moreover, the difference between 800 and 1000 over the course of 40 years is 8000, representing a nearly 25% difference. This fuzzy math shows Sosnowski's opinions lack the intellectual rigor necessary to qualify him as an expert. Though Sosnowski is no dummy, his conclusions rely on insufficient bases and merely parrot inadmissible out-of-court statements. *Brownlee*, 744 F.3d at 482. Consequently, Plaintiff's cannot meet their burden to establish him as an expert.

### III. Sosnowski's Opinions Do Not Reflect Any Methodology or Application Thereof.

Sosnowski's testimony is the product of gossip and his personal interpretation of limited testimony and unrelated case files; however, the hot-takes of a paid-expert and unidentified conference-goers are not reliable principles or methodology. Thus, Plaintiffs also cannot meet their burden in establishing that Sosnowski's testimony is the product of reliable principles and methods or that his opinion reflects a reliable application of the principles and methods to the facts of the case.

Courts consider four factors when assessing the reliability of an expert's methodology, including (1) whether the theory is based on scientific or other specialized knowledge that has been or can be tested; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error and the existence of standards controlling the theory's operation; and (4) the extent to which the theory is generally accepted in the relevant community. *Kluppelberg*, 2016 WL 6821138, at *1 (citing *Daubert*, 509 U.S. at 593–94, and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)). If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a

13

sufficient basis for the opinion, and how that experience is reliably applied to the facts. *See* Fed. R. Evid. 702. Advisory Committee's Note to 2000 Amendment.

Sosnowski's report purports to be a comparative analysis between the facts of the record and his own experience, but analysis or comparison are entirely lacking in his report. Sosnowski applies no principles or methods, let alone reliable ones, in reaching his conclusions. Sosnowski's claimed method—interpreting testimony and unrelated case files—is untestable, not subject to peer review, and devoid of standards. Sosnowski makes conclusory statements and gives opinions based on evidence from other cases, with no explanation of how the facts relate to his specialized knowledge or experience and no meaningful citation to data, literature, or specific professional standards. Hot-takes on unrelated cases and regurgitating polygrapher gossip are the methodologies of internet trolls, not qualified experts. Gossiping to draw expert opinions has no place in the scientific or legal community. Guessing is not a methodology. (Ex. C at 21:17–20; 24:23; 70:1–4; 86:10; 99:9). Because Sosnowski's opinions and testimony are not the product of a reliable application of a reliable methodology, Plaintiffs cannot meet their burden to proffer his testimony. As such, the Court should exclude him from testifying.

## CONCLUSION

The Court must exclude Sosnowski from testifying as an expert because his opinions fail on all fronts under Rule 702. Fed. R. Evid. 702. His experience will not help the trier of fact to understand the evidence or determine any fact in issue. His testimony is based on insufficient facts and data. He employed no methodology in producing his testimony. His opinions do not apply principles and methods to the facts of this case. Accordingly, Plaintiff cannot meet their burden to proffering Sosnowski as a witness.

WHEREFORE, Defendants Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Stephen Franko, and Robert Girardi respectfully request that the Court grant the motion and exclude the opinion testimony of Daniel Sosnowski, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, and any other relief the Court deems just and proper.

Respectfully submitted,

<u>/s/ Natalie Adeeyo</u>
Shneur Nathan (snathan@nklawllp.com)
Avi Kamionski (akamionski@nklawllp.com)
Natalie Adeeyo (nadeeyo@nklawllp.com)
Breana Brill (bbrill@nklawllp.com)
John Cerney (jcerney@nklawllp.com)
Special Assistants Corporation Counsel
Nathan & Kamionski LLP
206 S. Jefferson Street
Chicago, IL 60661

*Attorneys for Individual City Defendants*

## **CERTIFICATE OF SERVICE**

I, Natalie Adeeyo, an attorney, hereby certify that on December 18, 2024, I caused the foregoing document to be filed with the Court's CM/ECF system, which provided electronic notice and a copy of the same to all counsel of record.

*/s/ Natalie Adeeyo*
