# EXHIBIT B

# *SOS POLYGRAPH SERVICES, INC.*
*Polygraph Testing, Consulting, Training Seminars*

February 28, 2023

Attorney Russell Ainsworth
Loevy & Loevy
311 North Aberdeen, 3rd Floor
Chicago, Il 60607

Re: John Fulton vs Robert Bartik, ET Al.,
Case NO. 20-CV-3118
Case NO. 20-CV-3119

Dear Russell:

I have reviewed the materials attached to this report as Appendix A.

### **Qualifications**

I am an expert in the administration and interpretation of polygraph examinations. I am a licensed polygraph examiner in Alabama, South Carolina and Tennessee. I have personally administered and interpreted thousands of polygraphs.

I have been a Selected Subject Matter Expert on Interview & Interrogation; hired by Jenner & Block Law Firm, in the case Brendan Dassey v. Michael Dittmann; *Amici Curiae* brief for U.S. Supreme Court: and

A Selected Subject Matter Expert-Interview & Interrogation--John Hopkins Applied Physics Laboratory-- May 1997

I developed a specialized training course for The 5 Stages of Successful Interview & Interrogation Technique; Understanding & Interviewing Sexual Deviant Behavior. Have presented this class across the United States and overseas.

My qualifications are more fully listed in the attached CV.

### **Compensation**

I am being compensated for my time working on this case at my customary rate of $150 per hour for review of evidence, research, report writing and $1,500 for full or partial day of testimony plus any required travel expenses.

Attorney Russell Ainsworth
Re: John Fulton
Page 2 of 6
February 28, 2023


**Professional Opinion Regarding the John Fulton case:**

    1.  **Mr. Bartik's deposition on June, 22, 2022 regarding Mr. Fulton**

In reviewing Mr. Bartik's prior testimony, I keep in mind my years of experience conducting polygraph examinations and teaching other polygraph examiners how to conduct polygraph exams. I look to see the ways Mr. Bartik's testimony about his actions comports with or deviates from standard polygraph procedure.

On page 38, Mr. Bartik stated that it all depends if he takes notes during the pre-test interview. He stated that whether there's information necessary to write down.

On page 106, Mr. Bartik gave a number of reasons why a person may be unsuitable to test.

On page 3227 and 3228 of Mr. Bartik's trial testimony conducted on August 24, 2006, Mr. Bartik explained the purpose of the pre-test interview. He stated that it is to glean information that might have not been---that might not come about during any other interviews. It is to develop specific questions with the subject in order to give the polygraph examination, to make the questions hit exactly where they're supposed to hit. We ask physiology, to make sure of the person is okay, healthy enough to take the test. We'll ask to see if they're intelligent enough to take the test, what their schooling is, if they worked, how they feel. We go through all this background to make sure they're capable of taking the polygraph examination.

*Mr. Bartik failed to learn any information from Mr. Fulton regarding his overall background during the pretest interview which was relevant to Mr. Fulton. Mr. Bartik failed to learn that Mr. Fulton was taken into custody at 5:30am on March 18, 2003 and that the polygraph examination did not take place until 9:15pm which was almost 15 hours later. This information would be critical for any polygraph examiner to learn because the amount of time in custody, as well as factors pertaining to fatigue, are what we are training to assess. Before conducting a polygraph exam, we have to ensure that the subject is suitable for examination, and one of the first steps of making that assessment is to learn about fatigue.*

*Furthermore, polygraph examiners are taught in basic polygraph training to take notes during the entire pre-test interview. The purpose of note taking is to establish rapport with the individual who is about to submit to the polygraph examination. It is also relevant to obtain basic information concerning the overall suitability of the individual*

Attorney Russell Ainsworth
Re: John Fulton
Page 3 of 6
February 28, 2023

*to sit for the exam. Basic questions such as whether the individual is taking any type of prescription medication, number of hours that they slept, did they eat anything prior to the exam, are asked regarding the overall suitability of the individual. A major concern is whether or not the individual has received enough sleep during the last 24 hours.*

*The other reason to take notes is to establish where the individual resides, highest level of education, and their age at the time of the interview.*

*Polygraph examiners are trained to take notes about the critical areas in order to establish, if necessary, that the subject was suitable for examination, or, if the subject was not suitable, to document why. Recording the subject's answers to these questions creates a record that allows anyone reviewing the file to know exactly why the subject was, or was not, suitable for examination.*

On page 102 of his Fulton deposition, Mr. Bartik asked whether every time that he conducts a polygraph exam if he took notes during the pretest interview. Mr. Bartik answered "Yes".

*However, Mr. Bartik stated that he did not take any type of notes regarding the pre-test interview of Mr. Fulton.*

On page 123, Mr. Bartik was asked about the reason why Mr. Fulton's DOB was not filled in on the form to which Mr. Bartik stated that he had no idea as to why he left that information blank.

*It is imperative that age of the person who taking the exam be established. If an individual is the age of 17 or younger and required to sign a consent form that the results of the examination may be known and available to other people, then an adult who is responsible for someone under the age of 17 may be required. Particularly in the case of Mr. Fulton, who was 18 at the time he was examined, it would have been especially pertinent to record his age to establish his suitability for polygraph examination.*

### 2. Mr. Bartik's court testimony on April 28, 2006 regarding Mr. Fulton

On pages 1199, 1200, and 1201 Mr. Bartik stated that his report reflected the "Examination result, no examination". He also stated that the entire interview with Mr. Fulton lasted 25 minutes. He stated that at the conclusion of the conversation with Mr. Fulton he spoke with Detective Zalatoris and Detective Breen. Mr. Bartik stated that he

Attorney Russell Ainsworth
Re: John Fulton
Page 4 of 6
February 28, 2023

brought both detectives into the polygraph room where Mr. Fulton was. Mr. Bartik stated that he had Mr. Fulton recite the statement in front of Detectives Zalatoris and Breen. Mr. Bartik stated that the statement was paraphrased and not as detailed as Mr. Fulton made to Mr. Bartik. Mr. Bartik stated that "Subject repeated his admission in front of Gang Specialist J. Breen and Detective Zalatoris of Area 1 Violent Crimes".

Mr. Bartik also stated that he did not sign his Examination Briefing RD HJ 228346 and did not file the report with the detective division. Mr. Bartik typed up a report. In that report, Mr. Bartik stated that the Subject repeated his admission in front of Gang Specialist J. Breen and Detective Zalatoris of Area 1 Violent Crimes.

*The total time Mr. Bartik spent with Mr. Fulton lasted about 25 minutes which includes explaining the rights form, polygraph consent form and any explanation of the polygraph procedures. Mr. Bartik states within this 25-minute time frame that Mr. Fulton voluntarily confessed to a murder.*

*Mr. Bartik has a history of obtaining admissions and confessions of major crimes during a short amount of time spent in the pre-test interview. I have reviewed the 148 files in which Mr. Bartik reported that he did not conduct an examination between 1999 and 2002. Of those cases, Mr. Bartik reported that he obtained confessions from 79 of those individuals during the pre-test interview (80 if you include Donny McGee), and 8 additional people implicated other people during the pre-test interview. This is an astounding number that far exceeds the number of expected pre-test interview confessions in my experience, including from observing other examiners and discussing the topic with them. The pre-test interview is intended to be non-confrontational; it is a time to build rapport with the subject, to reassure them, to go over the procedure in a manner that minimizes the subject's anxiety about the test itself. The entire purpose of the pre-test interview is to ensure that the subject is not anxious about the test procedure, so that the examiner can determine that any stress response is related to an attempt to deceive rather than because of the nature of the examination. Accordingly, it is extremely rare to receive a confession to a serious felony case (let alone a homicide) during the pre-test interview. Obtaining over 80 confessions in a three-year period is beyond the realm of the number of pre-test confessions that an examiner could obtain by conducting pre-test interviews in the manner in which examiners are trained.*

*On June 9, 2006, while attending the Florida Polygraph Association with approximately 85 other trained examiners present. The question of pretest admissions during a polygraph examination involving a homicide was posed and it was the opinion of the entire group was that someone making an admission of guilty was extremely rare during the pretest interview itself.*

Attorney Russell Ainsworth
Re: John Fulton
Page 5 of 6
February 28, 2023

*I have personally conducted over 30,000 polygraph examinations and it is extremely rare for someone to confess to the crime that is under investigation during the pretest interview. Accordingly, it is my professional opinion that Mr. Bartik is either fabricating confessions or using accusatory interrogation techniques during the pretest interview; given the frequency that Mr. Bartik obtained statements during the pretest interview. I cannot say which is true or more likely; but I can state with a very high level of confidence that Mr. Bartik could not have obtained that many pre-test confessions if he had conducted the pre-test interview in the way it is supposed to be done.*

*Polygraph students are instructed at basic polygraph school that the pretest interview must not be accusatory in nature. In fact, the book written by John E. Reid & Fred Inbau states "At no time during the pretest interview should the examiner indulge in any interrogation aimed at determining the subject's deception or truthfulness, or at obtaining a confession of guilt." Any interrogation that may occur during a polygraph setting should not take place until the physiological data has been collected and then analyzed.*

*Detective John Zalatoris testified in his deposition conducted on July 18, 2022 that he does not recall Mr. Fulton confessing at the polygraph office, or that he was told that Mr. Fulton had confessed.*

*Detective Breen testified in his deposition conducted on August 3, 2022 that Mr. Fulton did not confess at the polygraph office and that he was not told he had confessed.*

*If Mr. Fulton had confessed, I would expect that the polygraph examiner would have ensured that the investigating detectives knew not only that the confession had occurred, but also all of the details provided in the confession, so that the detectives could continue their investigation armed with the facts. It would be the polygrapher's duty to ensure the detectives knew about the confession and the facts related in the confession. If Mr. Bartik did not inform the detectives that Mr. Fulton had confessed, this would be a stark deviation from basic polygraph standards.*

**Conclusion:**

My professional opinion that the interview of Mr. Fulton was not conducted in a fair and ethical manner.

My opinion is strongly based on my experience in conducting over 30,000 interviews and polygraph exams of individuals in a variety of cases.

Sincerely,

Attorney Russell Ainsworth
Re: John Fulton
Page 6 of 6
February 28, 2023

*Daniel E. Sosnowski*
Daniel E. Sosnowski, M.S.

DES/ms

# APPENDIX A

List of Materials Considered in Forming Opinions

Document #1- 44-page complaint

Document #2- Deposition of James Breen taken on August 3, 2022

Document #3- Deposition of John Zalatoris taken on July 18, 2022

Document #4- Court transcript # 03-CR-8607 conducted on May 19, 2004

Document #5- Court transcript # 03-CR-8607-02 conducted on February 28, 2005

Document #6- Court transcript # 03-CR-8607 conducted on April 28, 2006

Document #7- Court transcript # 03-CR-8607 conducted on August 24, 2006

Document #8- Court transcript # 03-CR-8607 conducted on August 30, 2006

Document #9- Deposition of Robert Bartik taken on June 22, 2022

Document #10- 3-page Examination Briefing RD: HJ228346 dated 03/18/03

Document #11 – Documents labeled FULTON MITCHELL 010072-013160