**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | Case No. 20-cv-3118 |
| | ) | |
| *Plaintiff*, | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| *v.* | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, *et al.* | ) | Magistrate Judge |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | Case No. 20-cv-3119 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | [Consolidated with *Fulton v. Bartik* |
| *v.* | ) | for pre-trial purposes] |
| | ) | |
| ROBERT BARTIK, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION TO EXCLUDE DIANA GOLDSTEIN,**
**DEFENDANTS' PURPORTED EXPERT IN FALSE CONFESSIONS**

Plaintiffs, John Fulton and Anthony Mitchell, by and through their attorneys, Loevy &
Loevy, respectfully move to bar the opinions of Defendants' purported false confessions expert,
Dr. Diana Goldstein, pursuant to Federal Rules of Evidence 702 and 703. In support of this
motion, Plaintiffs state as follows:

**INTRODUCTION**

Plaintiffs were convicted of murder based on false inculpatory statements they made
when Plaintiff Fulton was 18 years old and Plaintiff Mitchell was 17 years old. Plaintiffs have

1

always maintained that Defendants coerced these false statements from them over the course of multiple days of interrogation using threats, violence, and false promises of leniency.

To educate jurors about the phenomenon of false confessions, Plaintiffs have disclosed Dr. Richard Leo as an expert on police interrogation practices, the psychology of interrogation and confessions, psychological coercion, police-induced false confessions, and erroneous convictions. Over the course of nearly three decades, Dr. Leo has been a leading researcher on these topics, and his expert testimony on them has been admitted in dozens of cases across the county, including several cases in this district.

Defendants have disclosed Dr. Diana Goldstein ostensibly to rebut Dr. Leo's opinions, but Dr. Goldstein lacks the qualifications to do so and has not relied on a valid methodology to reach her conclusions. Dr. Goldstein, a clinical psychologist, is not a social scientist, a social psychologist, or a developmental psychologist. By her own admission, she has no opinions about the interrogations conducted in Plaintiffs' case and is not an expert in false confessions or interrogations. Instead, her opinions attempt to attack the field of false-confession research generally. Her knowledge of the field is based solely on reading a fraction of the published literature on the subject, a course of reading she began only after she was retained by defense counsel as an "expert" in the field. She has conducted no studies and has published no articles on the subject. She concedes that her opinions could be offered by anyone with a PhD or master's degree in any subject. Her opinions thus fall far short of the standard set by *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579 (1993), and subsequent cases, and her views on Dr. Leo's qualifications and research methods invade the province of this Court. She should be excluded from testifying at trial.

**BACKGROUND**

**A. The Study of False Confessions**

The study of false confessions emerged as an important topic in social science research following the wave of DNA exonerations that began in the 1990s. The DNA exonerations generated data sets involving confessions in cases where there is no dispute that people confessed to crimes that they did not commit. Building on research from decades earlier, scholars focused attention on the question of why an innocent person might confess to a crime they did not commit. Social scientists studied the data, applying scientifically rigorous methodology, and the result was a new fulsome body of research, one that identified patterns, risk factors, and hallmarks that consistently characterize and are associated with wrongful convictions.

The Seventh Circuit has acknowledged that the study of false confessions is a "valid social science" for nearly thirty years. *United States v. Hall*, 93 F.3d 1337 (7th Cir. 1996). In *Hall,* the Seventh Circuit reversed a criminal conviction because the district court erroneously excluded the expert opinions of Richard Ofshe, a sociologist who, like Dr. Leo, has studied false confessions. The Seventh Circuit held that the district court's exclusion of Ofshe "overlooked the utility of valid social science." 93 F.3d at 1345. The Seventh Circuit remanded the case for a *Daubert* hearing on the admissibility of Ofshe's testimony. On remand, following the hearing, the district court allowed Ofshe to testify. *United States v. Hall*, 974 F. Supp. 1198, 1203-04 (C.D. Ill. 1997) (the "systematic observation of real-world interrogations" and analysis of those observations, "is a method generally accepted as reliable by the community of social psychologists in this field.").

Following *Hall*, this district has consistently allowed experts to testify about the application of false confession research in disputed confession cases like this one. *See, e.g.,*

3

*Andersen v. City of Chicago*, 2020 WL 1848081, at *3 (N.D. Ill. Apr. 13, 2020) (Judge Kendall) (admitting testimony of false confession researcher Prof. Saul Kassin); *Harris v. City of Chicago*, 2017 WL 2436316, at *9 (N.D. Ill. June 5, 2017) (Judge St. Eve) (approving Dr. Leo's false confession research methodology as "sound, accepted and reliable" and permitting him to testify on matters related to the reliability of the plaintiff's confession); *Caine v. Burge*, 2013 WL 1966381, at *3 (N. D. Ill. May 10, 2013) (Judge Durkin) (denying the defense motion to bar Dr. Leo); *Kluppelberg v. Burge*, 2016 WL 6821138 (N.D. Ill. Sept. 16, 2016) (Judge Lefkow) (denying in substantial part a motion to bar Prof. Richard Ofshe); *Scott v. City of Chicago*, 2010 WL 3034254 (N.D. Ill. Aug. 3, 2010) (Judge Shadur) (same); *Taylor v. City of Chicago*, 2021 WL 12242781 at *2-*3 (N.D. Ill. Dec. 21, 2021) (Judge Lee) (approving Dr. Leo's proposed testimony); *Washington v. Boudreau*, 2022 WL 4599708, at *12 (N.D. Ill. Sept. 30, 2022) (Judge Kness) ("In line with other courts in this District that have confronted similarly qualified experts, the Court finds [Dr. Melissa] Russano's false-confession testimony reliable."); *Brown v. City of Chicago*, 2023 WL 2561728 (N.D. Ill. March 17, 2023) (Judge Pallmeyer) (allowing Dr. Leo's testimony in substantial part).

Despite the long history of permitting social science experts to opine on false confessions, Dr. Goldstein attacks not only Dr. Leo's opinions in this case, but the entire field of false confessions as unreliable.

### B. Dr. Leo's Qualifications

Dr. Leo has conducted empirical research on the phenomenon of false confessions, including police interrogation practices, the psychology of interrogation and confessions, psychological coercion, police-induced false confessions and erroneous convictions. Exhibit 1 (Leo Curriculum Vitae). His research has included spending months in the field with the

4

Oakland Police Department, where, among other things, he observed over 120 felony interrogations. He has also observed scores of videotaped interrogations.

Dr. Leo has unimpeachable academic credentials: an undergraduate degree from Berkeley; a master's degree from the University of Chicago; a J.D. from Boalt Hall School of Law; and a Ph.D. from Berkeley. He serves as Professor of Law and Psychology at the University of San Francisco. Dr. Leo is the author or co-author of an extensive list of books and peer-reviewed publications that are listed in his curriculum vitae. *See id.* at 5-21. His work is frequently cited in appellate judicial opinions, including opinions of the United States Supreme Court. *See, e.g., Corley v. United States*, 556 U.S. 303, 320–21 (2009) ("'[C]ustodial police interrogation, by its very nature, isolates and pressures the individual,' (citation omitted) and there is mounting empirical evidence that these pressures can induce a frighteningly high percentage of people to confess to crimes they never committed, *see, e.g.*, Drizin and Leo, *The Problem of False Confessions in the Post-DNA World*, 82 N.C. L. REV. 891, 906–907 (2004).''). Dr. Leo has written several books about false confessions, including the highly regarded *Police Interrogation and American Justice* (Harvard, 2008) and *Confessions of Guilt: From Torture to Miranda and Beyond* (Oxford, 2012).

He is, in short, an eminently qualified social scientist.

**C**. **Dr. Goldstein's Relevant Professional Background**

Dr. Diana Goldstein is a clinical psychologist with no background in social science. Her usual role as an expert witness in civil litigation involves conducting Rule 35 exams to identify malingering plaintiffs. Exhibit 2 (Goldstein Dep) at 52:19-53:13. She has not published a peer-reviewed paper in 20 years, and she has never been the first author on a peer-reviewed paper. Exhibit 3 (Goldstein Curriculum Vitae) at 11.

In the last three years, Dr. Goldstein has sought to expand her repertoire as an expert witness by offering opinions in cases involving allegedly false confessions. To date, she has never testified in court regarding the phenomenon of false confessions in any jurisdiction and, she admits, has never conducted any research into false confessions. *See* Exhibit 2 (Goldstein Dep) at 182:3-184:19. By her own admission, she is not an expert in interrogations or false confessions. *Id.* at 98:4-5. She contends she is nevertheless qualified to testify on the subject in this case because she has read some of the research on false confessions, a task she undertook strictly to provide "expert" opinions in litigation. *Id.* at 101-102. She admits that the opinions she offers in this case could be offered by anyone with a PhD or master's degree in any subject, simply because those degrees require training in research methods. *Id.* at 101:13-102:19.

### D. Dr. Goldstein's Opinions in this Case

Dr. Goldstein's opinions in this case have nothing to do with the interrogations and resulting confessions of Plaintiffs specifically. She admits she has drawn no conclusions about those interrogations or the confessions those interrogations produced Exhibit 2 (Goldstein Dep) at 91:9-95:24. Rather, her opinions are an attack on the entire field of false-confession research and on the methods of one of its foremost experts, Dr. Richard Leo. *Id.* (Dr. Goldstein's reasons for reviewing the depositions, police reports, and other materials in this case are unclear.) The details of Dr. Goldstein's opinions are detailed further below.

### LEGAL STANDARD

Opinion testimony is admissible only if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and then only if the testimony is "based on sufficient facts or data," is "the product of reliable principles and methods," and which "reflects a reliable application of the principles and methods of the facts of

6

the case." Fed. R. Evid. 702. The expert's opinion must be based on "knowledge," not merely "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014).

The trial judge occupies a "gatekeeping role" and must scrutinize proffered expert testimony to ensure it satisfies each requirement of Rule 702. *Daubert*, 509 U.S. at 592-93, 597. Part of the Court's gatekeeping role is to ensure that opinions are based on reliable science. *See, e.g.*, *Harris v. City of Chicago*, 14 C 4391, 2017 WL 3142755, at *5 (N.D. Ill. July 25, 2017) (decision of whether an expert's opinion is based on reliable science is "a legal conclusion for the Court's resolution pursuant to *Daubert* and Rule 702"). By contrast, it is not proper for an expert to testify that another expert's opinion is not based on reliable science. *Id*.

The proponent of the expert evidence bears the burden of establishing, by a preponderance of the evidence, that the requirements set forth in Rule 702 and *Daubert* have been satisfied. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). This rule applies not only to scientific testimony but to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

## ARGUMENT

### A. Dr. Goldstein Is Not Qualified to Offer Opinions on False Confessions or Police Interrogation Methods.

Dr. Goldstein is a clinical psychologist without any expertise in social psychology, police interrogation methods, or false confessions. As noted above, she offers opinions in this case that, by her own account, could have been rendered by anyone with a PhD—in any field—or even just a master's degree, simply because these degrees require training in research methods. Exhibit 2 (Goldstein Dep) at 76:11-24; 99:21-101:24. But having a degree, even in a related field, does not remotely qualify someone under Rule 702 to provide expert testimony in a particular area.

7

To decide whether an expert is qualified to testify, courts ask not whether the "expert is qualified in general, but whether his or her 'qualifications provide a foundation for [him or her] to answer a specific question.'" *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). More specifically, courts first "must look at each of the conclusions [the expert] draws individually to see if he has the adequate education, skill, and training to reach them." *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016). Just "because a doctor has a medical degree does not make him qualified to opine on all medical subjects." *Id*. In evaluating the expert's proposed testimony, the court should "scrutinize proposed expert witness testimony to determine if it has the same level of intellectual rigor that characterizes the practice of an expert in the relevant field so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (internal quotation marks omitted).

Courts in the Seventh Circuit frequently bar experts as unqualified to give particular opinions, even where the expert is highly qualified in a related area. *See, e.g.*, *Happel v. Walmart Stores, Inc.,* 602 F.3d 820 (7th Cir. 2010) (board-certified physician in psychiatry and neurology was not qualified to testify as expert regarding the alleged exacerbation of her patient's Multiple Sclerosis because physician had very limited experience with MS patients and the opinion was not supported by relevant medical literature); *Est. of Stuller v. United States*, 811 F.3d 890 (7th Cir. 2016) (affirming exclusion of expert because although horse breeder had over 50 years of experience in training and breeding horses, his expertise did not extend to financial and business aspects of running horse-breeding operation because he did not breed horses to make money); *Higgins v. Koch Dev. Corp.*, 794 F.3d 697 (7th Cir. 2015) (a doctor may have experience diagnosing and treating asthma but that does not make him qualified to assess its genesis and testify as to causation as an expert witness); *United States v. Truitt*, 938 F.3d 885, 889-890 (7th

Cir. 2019) (affirming decision that barred forensic psychologist from testifying about "charismatic groups" because he "had no experience" with those groups, and experience with similar groups did not qualify him to talk about other groups); *Client Funding Sols. Corp. v. Crim,* 943 F. Supp. 2d 849, 863 (N.D. Ill. 2013) (although attorney had more than two decades of experience as a successful trial lawyer, he did not qualify as an expert on complex matters of professional responsibility because he did not have any particular skill, experience, education, or training in that area).

Likewise, individuals with impressive credentials in related fields are not permitted to opine on false confessions. In *Harris v. City of Chicago,* the court excluded the opinions of Professor Paul Cassell, a former federal judge, regarding false confessions. The court concluded that:

> Although Professor Cassell's work experience establishes that he has knowledge of false confessions and coercive interrogations in the context of the criminal justice system, there is no indication in the record that Professor Cassell has researched the specialized area of coercive interrogations and false confessions drawing on the principles of rational decision making, perception, and interpersonal influence, or that he has systematically analyzed documented factors that correlate with false confessions. Further, Professor Cassell has not trained as a social scientist nor contributed to the study of coercive interrogation and false confessions that would allow him to rebut Dr. Leo's testimony based on the science of social psychology.

*Harris,* 2017 WL 3142755, at *4 (St. Eve, J.).

The same logic applies here, only more strongly. Dr. Goldstein's PhD in Psychology and experience in forensic and clinical psychology do not qualify her to opine on the social psychology research underlying Dr. Leo's opinions. And unlike Professor Cassell, Dr. Goldstein

has no background in false confessions whatsoever. *See generally* Exhibit 3 (Goldstein Curriculum Vitae). Accordingly, her opinions must be barred.

**B. Dr. Goldstein's Opinions About the Science Underlying False Confessions Research Are Legal Conclusions and Thus Not Proper Opinion Testimony Under Rule 702.**

Dr. Goldstein's opinions are inadmissible for the additional reason that they invade the Court's role when she opines on whether the study of false confessions is based on reliable science. Exhibit 4 (Goldstein Report) at 6-7. Part of the Court's gatekeeping role is to ensure that opinions are based on reliable science. *Daubert*, 509 U.S. at 595; *Smith v. Ford Motor Co*., 215 F.3d 713, 718 (7th Cir. 2000). Dr. Goldstein, however, opines that:

- The study of false confessions is "fraught with methodological problems" and "should not be relied upon to assess the reliability of suspect statements;" Exhibit 4 (Goldstein Report) at 3;

- The "empirical work remains in nascent form" and the "data points are relatively hard to come by;" the data points are "hard to come by" and the "subject samples" are "impure;" *id*.at 3;

- The "inferences drawn from this body of work must necessarily remain qualitative in nature;" *id*. at 3;

- "False confession researchers have drawn inferences from studies with small sample sizes;" *id*. at 4;

- "[A]t this time, there are no compelling data, as intuitive as it may seem, to conclude with any statistical certainty that juveniles make false confessions at significantly greater rates than adults, or that any of the other identified 'risk factors' do in fact significantly increase confession risk from a statistical standpoint." *Id*.

Defendants are free to make to such arguments about Dr. Leo's methods to the Court, but such conclusions are not opinions for an expert to offer to a jury.

The same issue has arisen in analogous cases. For example, in *Chatman v. City of Chicago*, the plaintiff retained Dr. Melissa Russano Rodriguez to opine on the circumstances that may lead to a false confession. 14 C 2945, 2018 WL 11426430, at *2 (N.D. Ill. Oct. 23, 2018).

The defense hired Dr. Michael Welner to rebut the testimony of Dr. Russano. 14 C 2945, 2018 WL 11426158, at *2 (N.D. Ill. Oct. 30, 2018). Like Dr. Goldstein, Dr. Welner sought to testify that the studies cited by Dr. Russano were "unreliable and biased." *Id*. at *4. The court in *Chatman* barred that opinion, agreeing with the plaintiff that the task of evaluating whether there is a sufficient foundation or methodology for an expert opinion is part of the Court's gatekeeping function under *Daubert*. *Id.* at *3-4 ("Plaintiff contends that these opinions should be barred because [t]he task of evaluating whether there is a sufficient foundation or methodology to Dr. Russano's opinions is part of [the] Court's gatekeeping function under *Daubert*. The Court agrees.") (internal quotations omitted).

The court in *Harris* also addressed this issue, concluding that proposed defense expert "Professor Cassell's opinion concerning the science upon which Dr. Leo relied is not only a legal conclusion for the Court's resolution pursuant to *Daubert* and Rule 702, but the Court soundly rejected Defendant Officers' argument that Dr. Leo's opinion was not based on reliable science in the Court's June 5, 2017 ruling, as have other courts in this district." *Harris*, 2017 WL 3142755, at *5. In short, whether the science on which Dr. Leo relies is sound is a matter for this Court—not Dr. Goldstein—to decide, and her opinions on the subject cannot be presented to a jury.

Moreover, Dr. Goldstein's opinions on the validity of false-confession research are at odds with what peer-reviewed publications and numerous courts have already concluded. As explained above, the Seventh Circuit and many other courts have acknowledged the validity of false confession research. *See, e.g.*, *Andersen v. City of Chicago*, 2020 WL 1848081, at *3 (N.D. Ill. Apr. 13, 2020); *Harris v. City of Chicago*, 2017 WL 2436316, at *9 (N.D. Ill. June 5, 2017); *Caine v. Burge*, 2013 WL 1966381, at *3 (N. D. Ill. May 10, 2013; *Kluppelberg v. Burge*, 2016

WL 6821138 (N.D. Ill. Sept. 16, 2016) (Lefkow, J.); *Scott v. City of Chicago*, 2010 WL 3034254 (N.D. Ill. Aug. 3, 2010); *Taylor v. City of Chicago*, 2021 WL 12242781 at \*2-\*3 (N.D. Ill. Dec. 21, 2021; *Washington v. Boudreau*, 2022 WL 4599708, at \*12 (N.D. Ill. Sept. 30, 2022; *Brown v. City of Chicago*, 2023 WL 2561728 (N.D. Ill. March 17, 2023.

### C. Dr. Goldstein's Opinions Are Not Grounded in Sound Methodology.

Dr. Goldstein's opinions are also inadmissible because they are not derived by applying a sound methodology. Rule 702 requires that an expert "explain the 'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line.'" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010); *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (same). To that end, expert reports must be "detailed and complete" and explain "how and why the expert reached a particular result." *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) (internal quotation marks omitted); *Smith*, 215 F.3d at 718 (opinions must be based upon "some recognized scientific method").

When evaluating the reliability of expert testimony, the court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592-93. A court may consider the following non-exhaustive list of factors:

> (1) [W]hether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

*Id.* at 593-94. To meet the standard of Rule 702, an expert's opinions must be based on the kinds of facts or data acknowledged experts in the field would reasonably rely upon. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) ("To be 'qualitatively' adequate, 'an

expert must employ 'those kinds of facts or data' on which experts in the field would reasonably rely.'"). In other words, "the key to the gate is not the ultimate correctness of the expert's conclusions ..., it is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). "Talking off the cuff—deploying neither data nor analysis—is not acceptable methodology." *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532 539 (7th Cir. 2000).

Dr. Goldstein, however, does not identify any recognized methodology she used to reach her conclusions. She does not cite any scientific protocol or methodology. Despite her lack of study in the field of false confessions, she simply declares the field "nascent" and the studies that have been conducted "too small," without reference to any comparator. Exhibit 4 (Goldstein Report) at 3-4. In fact, the study results that Dr. Goldstein critiques were published in reputable journals, whose peer review process is designed to validate the statistical conclusions she criticizes. She does not explain how the peer review process failed, apparently many dozens of times, so as to allow these field studies to be published.

Indeed, Dr. Goldstein's report is pervaded by a failure to explain her conclusions. For example, at one point she writes the following with respect to youth as a risk factor for false confessions:

> While those ages 14-16 undergoing interrogation were significantly more likely to make a false confession compared to those ages 17-24 (20.0%, 589 participants versus 10.3%, 304 participants), the overall rate of false confession among all interrogated participants ages 14 to 24 was 14.7%, a number that, while certainly meaningful, is relatively small, making its application to single cases like Mr. Fulton and Mr. Mitchell's difficult to understand.

*Id*. at 21-22. She does not explain what is "meaningful" about the 14.7% or why, nonetheless, we should disregard that figure as being "relatively small" (or even to what she is comparing this

13

"relatively small" number). Nor does she explain why Dr. Leo is wrong to recognize youth as a false-confession risk factor that was present for Plaintiffs, both of whom were between the ages of 14 and 24 when they were interrogated. As a further example, Dr. Goldstein states that field studies on false confessions fail to separate murder cases from other felony or misdemeanor cases and that is a basis for calling the entire field into question, but she offers no explanation for why she believes false confessions in the murder context are distinct from other cases, beyond that the potential sentence is greater. *Id*. at 3. The conclusion that confessions to other crimes must therefore be irrelevant cannot be assumed. In short, Dr. Goldstein reaches many conclusions without explanation, failing to meet the high standards set by *Daubert*.

Moreover, Dr. Goldstein's criticisms often simply rehash limitations acknowledged by false confession researchers themselves. For example, Dr. Goldstein points to Dr. Leo and Dr. Ofshe's article, "Consequences of False Confessions: Deprivations of Liberty and Miscarriages of Justice in the Age of Psychological Interrogation," where the authors acknowledge the 60 false confessions they studied constitute a statistically small sample size. Such limitations may be fodder to cross examine Dr. Leo, but Dr. Goldstein's ability to repeat what Dr. Leo has already said does not qualify Dr. Goldstein as an expert in the field. She also criticizes observational studies for not being lab studies and lab studies for not being observational studies, Exhibit 4 (Goldstein Report) at 3; 8; Exhibit 2 (Goldstein Dep) at 85-86, but obviously studies cannot be both. And, in any event, both forms of research have yielded the same conclusions, a fact with which Dr. Goldstein never grapples, again highlighting her lack of expertise in social science.

Dr. Goldstein's ignorance of the field of false confession research—and of social science in general—is also on display when she fails to apply the methodologies generally recognized in

social science to reach her conclusions. By failing to do so, she does not exercise the type of "soundness and care" that are typically used by experts in the field, which is a requirement of Rule 702. *Schultz*, 721 F.3d at 431; *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony . . . have a factual basis.").

Furthermore, while Dr. Goldstein is quick to criticize the methodologies underlying social science for lack of definitive evidence, her own ideas have not been tested or subjected to peer review and have not been accepted in the relevant expert community or any other expert community she identifies. By her own admission, Dr. Goldstein became familiar with the body of false confession research in the context of a legal matter. Exhibit 2 (Goldstein Dep) at 88:2-6. She is not an expert in the field of false confessions study, but she acknowledges that Dr. Leo is. *Id.* at 98:3-5 ("I do not consider myself an expert in false confession research"); 99:8-11; 245:4-15. She points to her training in conducting research as a PhD student as supporting her opinions and contends that fatal flaws in false-confession research would be obvious to anyone with basic research training, *id.* at 101:13-24; 76:11-24, but she never explains how studying false confessions could be done properly. Opinions of this sort are not "expert" within the meaning of Rule 702. *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 396 F.3d 416, 419 (7th Cir. 2005) ("A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term."). Dr. Goldstein also has not and cannot claim her methodology and conclusions are "widely accepted" within the field. Her methodology is obscure, and her conclusion that false-confession research is "irreparably" flawed, *see id.* at 109:1, obviously is not widely accepted in the field.

## CONCLUSION

For all the foregoing reasons, Dr. Goldstein's opinions and testimony should be excluded.

DATED: December 18, 2024       Respectfully submitted,

**PLAINTIFF JOHN FULTON**
**PLAINTIFF ANTHONY MITCHELL**

BY:    /s/ *Julia Rickert*
       *One of Plaintiffs' Attorneys*

Arthur Loevy
Jon Loevy
Russell Ainsworth
Julia Rickert
Fatima Ladha
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
T: 312-243-5900
F: 312-243-5902
julia@loevy.com

Andrea D. Lyon
LYON LAW
53 W. Jackson Blvd., Ste. 1650
Chicago, IL 60604
T: 312-877-5543
F: 312-663-3707
andrea@andrealyon.com

## CERTIFICATE OF SERVICE

I, Julia Rickert, an attorney, hereby certify that on December 18, 2024, I caused the foregoing

document to be served on all counsel of record by using the Court's CM/ECF system.

/s/ *Julia Rickert*
*One of Plaintiffs' Attorneys*