IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FULTON, | ) | Case No. 20-cv-3118 |
| | ) | |
| *Plaintiff,* | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| v. | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, *et al.* | ) | Magistrate Judge |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | Case No. 20-cv-3119 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | [Consolidated with *Fulton v. Bartik* |
| v. | ) | for pre-trial purposes] |
| | ) | |
| ROBERT BARTIK, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO BAR PLAINTIFFS' POLYGRAPH EXPERT DANIEL SOSNOWSKI**

NOW COMES Plaintiffs John Fulton and Anthony Mitchell for their response to Defendants' Motions to Bar Plaintiffs' Polygraph Expert Daniel Sosnowski (Fulton Dkt. 280, Mitchell Dkt. 284), and state as follows:

**INTRODUCTION**

Individual City Defendants' motion to exclude Plaintiffs' polygraph interview expert Daniel Sosnowski is based almost entirely on the untenable premise that Robert Bartik did not conduct a pre-polygraph interview with John Fulton. Rather, Defendants fictionalize, Mr. Fulton

voluntarily confessed to killing Collazo before Bartik could even begin his polygraph test, so there is no need for Plaintiffs' polygraph expert.

At the start of this litigation, Defendants themselves disclosed a polygraph expert to opine on the alleged appropriateness of Bartik's conduct. At summary judgment, Defendants argued that Mr. Fulton had confessed to Bartik during the pre-test portion of the polygraph examination. *See* Individual City Defendants' Motion for Partial Summary Judgment ("Defendants' MPSJ Mot.") Dkt. 202 at 9.[1] The Court ruled that whether Mr. Fulton "confessed" to Bartik is a disputed fact as Plaintiffs maintain that no such confession occurred. *See* Dkt. 256 at 44-45.

In the instant motion, Defendants have done a complete about-face: they now argue that Mr. Fulton's confession to Bartik did not occur in the pre-polygraph interview but was completely divorced from the polygraph examination. Accordingly, they argue that Sosnowski should be excluded as "his opinion is irrelevant because Plaintiff never took a polygraph and even Fulton himself does not allege Bartik made any attempt to even interview him about the incident." Dkt. 280 at 3. In other words, Defendants' new theory is that Mr. Fulton did indeed "confess" to Bartik, the polygraph administrator to whom Mr. Fulton was sent to take a polygraph test, but that confession had nothing to do with polygraph examinations. That fiction, as well as the reasons explained below, should warrant denial of Defendants' motion.

I. **Background**

Plaintiffs aver that Defendants fabricated their confessions to Collazo's murder, including Mr. Fulton's supposed confession to Bartik. In 2003, Bartik was a polygrapher with the Chicago Police Department. On March 18, 2003, Mr. Fulton was taken to the polygraph unit by

---

[1] All docket citations refer to the *Fulton* docket.

Defendants Breen and Zalatoris so that a polygraph exam could be administered by Bartik. There, according to Bartik, before he could even begin the polygraph examination, Mr. Fulton apparently voluntarily "confessed" to murdering Collazo. Since this purported "confession," as Bartik presented it, had been given prior to Mr. Fulton's polygraph test, no test was ultimately conducted. Accordingly, Defendants argue in their motion, Sosnowski's opinions about standard polygraph procedures are irrelevant and Mr. Fulton's pre-polygraph confession to the polygraph examiner has nothing to do with polygraph exams at all.[2]

Additionally, Defendants argue that Sosnowski should be excluded because he is unqualified to opine on confessions (while conceding that he has "specialized knowledge of polygraph examinations," Dkt. 280 at 11) and because he uses unreliable methodology for his opinions. Both of these arguments are baseless. Accordingly, their motion should be denied.

## II. Argument

### A. Sosnowski's Opinions are Relevant to Plaintiffs' Claims and Helpful to the Jury

Defendants argue that Sosnowski's opinions about the procedures governing polygraph tests and pretest interviews and are irrelevant because no polygraph test was ultimately conducted in this case. They characterize Mr. Fulton's meeting with Mr. Bartik as a confession separate from the polygraph examination. For this reason, Defendants argue, Sosnowski's opinions about polygraph examinations are irrelevant and because he is not a false confessions expert, he should be excluded.

---

[2] One problem, of course, with Defendants' version of events is that Plaintiffs maintain that Bartik never told the other officers that Fulton confessed to him, nor were the prosecutors alerted to this supposed fact until the eve of trial when Bartik himself proffered that information to them. The other problem is that when Bartik claimed Mr. Fulton was confessing to him, Defendants Breen and Zalatoris claim that Mr. Fulton was confessing to them in another location across the city. Nonetheless, if Defendants' entire theory at the start of this case is that Mr. Fulton confessed to Bartik before the polygraph exam began, Plaintiffs should be permitted to present an expert witness on polygraph examinations who can opine on standard pre-polygraph interview techniques. That is exactly who Daniel Sosnowski is.

3

Notwithstanding that Defendants have now abandoned their earlier position that Mr. Fulton's inculpatory statement occurred in the context of a "pretest interview," *see* Dkt. 202 at 9, the basis of this motion is flawed. Indeed, Mr. Fulton's apparent confession to Bartik, if it had occurred at all, had to have happened during the pre-polygraph test interview, because there was no other reason for Detectives Breen and Zalatoris to have taken Mr. Fulton from Area One, where they were interrogating him, to Homan Square to speak to a polygraph administrator. For this reason, Defendants' argument that Sosnowski's opinions are irrelevant because they are not focused on false confessions but on polygraph techniques should be rejected. In fact, polygraph practices are entirely relevant to understanding Bartik's role in this case.

Defendants argue that Mr. Fulton himself stated, during his deposition, that no pre-polygraph interview occurred, but that logic is flawed.[3] The Court denied summary judgment as to whether Mr. Fulton "confessed" during the pretest interview, deciding it is a disputed fact. Since it is disputed, Plaintiffs seek to proffer Sosnowski for the very purpose of bolstering Mr. Fulton's version of events – i.e., that there was no confession even after Bartik commenced the pretest interview. To the extent that Defendants seek to stipulate that no pretest interview occurred, it necessary follows Bartik fabricated the occurrence of the confession, too. They cannot have it both ways.

More to the point, the fact that Sosnowski's opinions are based on a disputed fact is no reason to bar his testimony. *See Smith v. Ford Motor Co*., 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of

---

[3] Defendants also mischaracterizes Mr. Fulton's deposition testimony. He is not saying that no pre-test interview occurred (in fact, he states that Bartik asked him whether he understood what a polygraph examination was, informed him that it was a voluntary process, and provided him a form to sign, which, as Sosnowski opines, are typical in a pre-test interview). Instead, Mr. Fulton's statements show that he never confessed to Bartik in the ten to fifteen minutes he was alone with him. *See* Dkt. 280-1.

fact"); *United States v. Hall*, 93 F.3d 1337, 1345–46 (7th Cir. 1996) ("It is enough if the expert makes clear what his opinion is, based on the different possible factual scenarios that might have taken place."); *Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 2436316 at *12 (N.D. Ill. June 5, 2017) ("It is well-settled that experts can base their opinions on disputed facts because the 'soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.'" (quoting *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 782 F.3d 353, 360 (7th Cir. 2015)); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 1730608, at *6 (N.D. Ill. May 2, 2016) ("Moreover, although an expert cannot rely on facts that are clearly contradicted by undisputed evidence, an expert may rely on his client's version of the facts when forming his opinions.").

In particular, Defendants take issue with Sosnowski's opinion that the regularity with which Bartik apparently procured these pretest confessions is atypical. Defendants are incorrect that this is "impermissible propensity evidence." Sosnowski is not opining that Bartik fabricated confessions on other occasions. Rather, Sosnowski will opine that the pretest portion of the polygraph examination is supposed to be non-confrontational. The purpose is to ensure the subject is a proper subject of the test, to develop the test questions, and to make the subject feel comfortable with the test. The idea is that the examiner should try to ensure that any test results are the result of deception/non-deception, and not an elevated response because the subject is nervous about the test or the questions asked. Dkt. 280-2 at 5.

Sosnowski reviewed years of Bartik's reports in which Bartik reported that no examination was provided. In an astounding number of occasions (80 out of 148, well over half), Bartik claimed that the subject confessed to the crime (either murder or a Class X felony) during

5

the pretest interview. Sosnowski opines that obtaining confessions during pretest interviews is exceedingly rare, because of the non-confrontational aspect of the process. *See id.* Accordingly, Sosnowski opines that either Bartik is confronting subjects during the pretest interview contrary to his training, or he is fabricating the confessions. Sosnowski is simply identifying the standards relevant to polygraph administrators like Bartik and detailing Bartik's departures therefrom. *See Jimenez v. City of Chicago,* 732 F.3d 710, 721 (7th Cir. 2013) ("When an expert offers an opinion relevant to applying a legal standard ... the expert's role is limited to describing sound professional standards and identifying departures from them.") (internal quotation marks omitted); *Richman v. Sheahan*, 415 F. Supp. 2d 929, 944 (N.D. Ill. 2006) ("[t]here is no doubt that under Rules 702 and 704 an expert may testify about applicable professional standards and the defendants' performance in light of those standards."). This is exactly the kind of testimony that experts are permitted to present.

Defendants point to *Harris v. City of Chicago*, which was a coerced confessions case where the court granted the defendants' motion *in limine* to bar Rule 404(b) witnesses. No. 14 C 4391, 2018 WL 2183992, at *17 (N.D. Ill. May 11, 2018). This case is distinguishable. Sosnowski is not opining that Bartik has a propensity to fabricate confessions; he is simply identifying how Bartik's practice deviates from accepted practices. It impeaches Bartik's testimony that he was following accepted pretest practices when Mr. Fulton spontaneously confessed. The *Harris* case, however, dealt with an entirely different subject matter – confessions that Bartik allegedly obtained via coercion, as opposed to fabricating them out of whole cloth. What Defendants object to is Sosnowski's opinions about the regularity of Bartik's pretest confessions, which cast doubt on whether Mr. Fulton confessed to Bartik. That has nothing to do with Bartik's character and everything to do with Mr. Fulton's claims.

While Defendants are correct that failing to follow normal interrogation techniques is not, by itself, unconstitutional, Sosnowski never opines as such. Dkt. 280 at 10. Rather, his opinion is focused on proper polygraph interrogation techniques, which goes to whether Bartik had the knowledge, motive, and plan to fabricate Mr. Fulton's confession.

Defendants' other objections related to the 80 confessions Bartik received out of 148 cases where no polygraph test was ultimately given, including whether those confessions were recanted eventually, whether the defendants denied confessing, and whether those confessions led to convictions or reversals. Dkt. 280 at 9-10. But this attack is classic fodder for cross-examination, not a basis to bar an expert. Experts are entitled to testify about disputed facts. To the extent Defendants' objections relate at all to his opinions on polygraph tests, they go to the weight, not admissibility, of Sosnowski's opinions and may be raised appropriately during his cross-examination.

### B. Sosnowski's Opinions are Based on Sufficient Data and Facts

Defendants next argue that Sosnowski should be excluded because his opinions are not based on sufficient facts or data. Specifically, Defendants insist that Sosnowski looked only to the "limited prior testimony of the Individual City Defendants, 148 files, and gossip of an untold number of unidentified examiners in attendance at the June 2006 Florida Polygraph Association conference" to form his opinions. Dkt. 280 at 11. However, this mischaracterizes the basis of Sosnowski's opinions.

Defendants cite to *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) to argue that Sosnowski's expertise has no bearing on his opinions. In *Mamah*, the Seventh Circuit upheld the exclusion of two experts, including a false confessions expert, who "could testify that false confessions do occur, but…could not establish that [the defendant] was interrogated under

7

circumstances that could produce a false confession." *Id*. at 478. The opposite is true here. Unlike the expert in *Mamah*, Sosnowski opines that Bartik's conduct in the pretest interview suggest a fabricated confession, an opinion based on his expertise that is entirely related to the facts of this case.

Defendants are correct that in forming his opinions, Sosnowski reviewed various case files, including depositions testimony of several Defendants and the underlying criminal case transcript. In addition, the "148 files" Defendants paint as unrelated to Plaintiffs' case actually comprise all cases during the three-year period of 1999 and 2002 in which Bartik reported that he did not conduct an examination. Of those 148, Bartik supposedly received confessions in 80 cases. Finally, the so-called "gossip" from the Florida Polygraph Association conference Sosnowski apparently relies on as the last basis of his opinions actually represents the opinions of 85 other trained polygraph examiners, who noted at the conference that pretest admissions in homicide cases are "extremely rare" during the pretest interview itself.

All the above are appropriate foundations for Sosnowski's opinions. His review of Defendants' prior testimony and the underlying criminal record does not constitute review of an "incomplete record" – rather, Sosnowski has reviewed the relevant documents in this case to form his opinions. If Defendants feel this evidence is insufficient, they have everything they need to cross-examine him at trial. His review of the 148 cases in which Bartik did not ultimately administer a polygraph exam and yet, approximately 54% of the time, procured a confession anyway is an appropriate basis to opine that Bartik deviated from standard pretest procedures. Additionally, Sosnowski's takeaways from the Florida Polygraph Association Conference are helpful in explaining what prevailing standards are in his particular field, and Defendants cannot dismiss the insights of 85 polygraph administrators as mere hearsay, Dkt. 280 at 5. As the

8

Supreme Court has advised, expert opinions based on hearsay are admissible "if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject,'" which takeaways and insights from a professional conference constitute. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993). Additionally, the fact that Sosnowski did not use the American Polygraph Association guidelines to form his opinions is hardly a reason to bar him, particularly because he bases his opinions on reliable sources and his own extensive experience.

Moreover, the list above does not constitute the entirety of the bases for Sosnowski's opinions. In addition to Sosnowski's review of Plaintiffs' case files, the files of related cases, Bartik's case files, and the insights of other experts in his field, his opinions are based on the over 30,000 polygraph examinations he himself has conducted as well as scholarship by John E. Reid and Fred Inbau, who have published literature and developed techniques related to criminal interrogations, on pretest procedures.

"Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 591 (7th Cir. 2000); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Jordan v. City of Chi.,* No. 08 C 6902, 2012 WL 254243, at *3 (N.D. Ill. Jan. 27, 2012) ("An expert may be qualified to render opinions based on experience alone."). Defendants do not argue that Sosnowski's significant experience is insufficient – rather, Defendants take umbrage with the assertion that he has conducted 30,000 polygraph examinations over the course of his career, because he states in his deposition that he administered "800, 900, 1,000," tests a year over his 40-years long career. Dkt. 280-3 at 19:3. Defendants have helpfully calculated for

us that 30,000 examinations over 40 years results in 750 examinations a year, and this difference shows Sosnowski "lacks the intellectual rigor necessary to qualify him as an expert." Dkt. 280. This is absurd. Obviously, 30,000 is an estimate, and Defendants do not explain why it matters if Sosnowski has conducted 30,000, 32,000, or some higher number in his career. Accordingly, Sosnowksi's opinions are based on sufficient facts and data, including his own significant experience.

### C. Sosnowski's Methodologies are Sound

Defendants cite to the four factors in *Daubert* in support of their argument that Sosnowski's methodology, which they construe as simply "interpreting testimony and unrelated case files," Dkt. 280 at 14, is flawed.[4] However, as this Court noted in *Kluppelberg*, "[t]hese factors…are not a 'definitive checklist or test,' *Daubert*, 509 U.S. at 593, and the importance of different factors will vary based on 'the particular circumstances of the particular case at issue.' *Kumho*, 526 U.S. at 150." Moreover, Defendants incorrectly limit the bases of Sosnowski's opinions as explained above.

Defendants insist that Sosnowski should be excluded because his methodologies are flawed and he relies "solely "on his own experience without explaining why his experience is a sufficient basis for his opinions. Dkt. 280 at 13-14; *see also Potts v. Manos*, No. 11 C 3952, 2017 WL 4365948, at *5 (N.D. Ill. Sept. 29, 2017) ("A witness who offers expert testimony based on his experience must connect his experience to the facts of the case in order to meet the standard for reliability under *Daubert* and the Federal Rules of Evidence."); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("If the witness is relying solely or

---

[4] These factors are "(1) whether the theory is based on scientific or other specialized knowledge that has been or can be tested; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error and the existence of standards controlling the theory's operation; and (4) the extent to which the theory is generally accepted in the relevant community." *Kluppelberg v. Burge*, No. 13 C 3963, 2016 WL 6821138, at *1 (N.D. Ill. Sept. 16, 2016) (citing *Daubert*, 509 U.S. at 593–94, and *Kumho Tire Co.*, 526 U.S. at 151.

primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").

However, as discussed above, Sosnowski does not base his opinions solely on his own significant experience conducting polygraph examinations. Even accepting that his experience is the primary basis of his opinions, he *does*, in fact, explain why they are a sufficient basis for his opinions. For example, Sosnowski states in his report "it is extremely rare for someone to confess to the crime that is under investigation during the pretest interview" based on the 30,000 polygraph examinations he has conducted as well as the opinions of other polygraph examiners from the 2006 Florida Polygraph Association conference. Dkt. 280-2 at 6 of 7. His experience, training, and knowledge of regular polygraph practices also provides him with the basis to reliably opine that "polygraph examiners are taught in basic polygraph training to take notes during the entire pre-test interview," *id*. at 3 of 7, noting it is atypical for Bartik to not have produced any notes of Mr. Fulton's apparent confession. He also looks to his experience to opine that if a defendant confesses during a polygraph or pretest interview, "[i]t would be the polygrapher's duty to ensure the detectives knew about the confession and the facts related in the confession. If Mr. Bartik did not inform the detectives that Mr. Fulton had confessed, this would be a stark deviation from basic polygraph standards." *Id*. at 6 of 7. In other words, his vast experience directly relates to the claims in this case.

Nevertheless, Sosnowski's methodologies encompass more than his personal experience. As discussed above, he reviewed Plaintiffs' case files, including the underlying criminal case files. He reviewed the testimony of not only Bartik, but Officers Zalatoris and Breen, to opine on whether Bartik followed typical procedure even as to his colleagues. He reviewed Bartik's

11

practices in other cases, which are not, as Defendants insist, unrelated, but show Bartik's knowledge, plan, and motive to fabricate Mr. Fulton's "confession." He then compared Bartik's conduct in this case to his own experience of over 40 years administering polygraph examinations, the insights of his peers, and literature by interrogation experts. This is a sound methodology for Sosnowski to form his opinions.

## CONCLUSION

Defendants' Motion to exclude Sosnowski should be denied. As an expert on polygraph examinations who can opine on pretest interrogations, Sosnowski will aid the jury in understanding Bartik's role in fabricating Mr. Fulton's so-called confession. His opinions are based on sound methodologies, and he is qualified to opine on the subject. Accordingly, the motion should be denied.

Respectfully submitted,

**PLAINTIFF JOHN FULTON**
**PLAINTIFF ANTHONY MITCHELL**

BY: /s/ Russell Ainsworth
*One of Plaintiffs' Attorneys*

Arthur Loevy
Jon Loevy
Russell Ainsworth
Julia Rickert
Fatima Ladha
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
312-243-5900
russell@loevy.com

Andrea D. Lyon
LYON LAW
53 W. Jackson Blvd., Ste. 1650
Chicago, IL 60604

312-877-5543
andrea@andrealyon.com

## CERTIFICATE OF SERVICE

I, Russell Ainsworth, an attorney, hereby certify that on January 8, 2024, I served the foregoing document to be served on all counsel of record by using the Court's CM/ECF system.

/s/ Russell Ainsworth