IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FULTON, | ) | Case No. 20-cv-3118 |
| | ) | |
| Plaintiff, | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| v. | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, et al., | ) | Magistrate Judge |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | Case No. 20-cv-3119 |
| | ) | |
| Plaintiff, | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| v. | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, et al., | ) | Magistrate Judge |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**INDIVIDUAL CITY DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE DIANA GOLDSTEIN**

Defendants Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Stephen Franko, and Robert Girardi ("Individual City Defendants"), by and through their undersigned counsel, hereby submit their response to Plaintiff's motion to exclude the testimony of Dr. Diana Goldstein (Dkt. No. 283), and state as follows:

**INTRODUCTION**

Dr. Diana Goldstein, a licensed forensic neuropsychologist with over two decades in the field of human behavior, is eminently qualified to provide rebuttal opinion testimony that calls into question the underlying basis for the opinions of Plaintiff's social psychology expert, Dr. Richard Leo. According to Dr. Leo's report, he seeks to offer opinions on what he describes as the

"empirical field of research in the academic disciplines of psychology, criminology, and sociology on the subjects of police interrogation practices, psychological coercion, and false confessions." (*See* Expert Report of Dr. Richard Leo, attached hereto as Ex. 1, at 11-13). Based on this research, Dr. Leo seeks to opine that Plaintiff John Fulton's, Plaintiff Anthony Mitchell's, and witness Johnnitta Griffin's descriptions of their interrogations by detectives are "consistent with the empirical social science research on the types of interrogation techniques, methods, practices and effects that explain how and why innocent individuals are often moved to make and/or agree to false and unreliable confessions." (*Id*. at 73-77) (emphasis added). In rebuttal, Individual City Defendants retained Dr. Goldstein who opines that false confessions research is in is nascent form, contains no field investigations involving a uniform assessment of murder suspects and their interrogations, and lacks a sufficient amount of empirical data to reliably find a causal link between purported false confessions and police interrogation tactics. (*See* Expert Rebuttal Report of Dr. Diana Goldstein, attached hereto as Ex. 2 at 3-5, 22). As a result, Dr. Goldstein concluded that Dr. Leo's opinions identifying "risk factors" that in fact increase the risk of false confessions – including the risk factors that allegedly exist here that increased Plaintiffs' likelihood to falsely confess – are not backed by compelling statistical data. (*Id*.) Dr. Goldstein should be permitted to draw on her expertise as a clinical and forensic neuropsychologist and expert on human behavior to refute the underlying methodology Dr. Leo used to render his opinions: the social science research behind false confessions. (*See* Ex. 2).

Despite the many opinions offered by Dr. Leo that directly involve the field of psychology, Plaintiffs now move to bar Dr. Goldstein from testifying in this case entirely, arguing that: (1) she is unqualified to render opinions regarding false confessions or police interrogation methods; (2) her opinions regarding false confessions research invades the province of the Court; and (3) she

does not rely upon a "scientific protocol or methodology" to reach her conclusions. (*See* Plaintiffs' Mot. to Exclude Diana Goldstein, Dkt. No. 283).[1] Each of Plaintiffs' arguments are meritless and should be rejected just as they were rejected in *Chatman v. City of Chicago*, No. 14 C 2945, 2018 WL 11426158, at *2 (N.D. Ill. Oct. 30, 2018). *Id.* (rejecting argument that psychologist should be barred as rebuttal to plaintiff's false confessions expert). The first problem with Plaintiffs' position is that they attempt to frame Dr. Goldstein's expertise and opinion as limited to the field of false confessions. This is not true. Dr. Goldstein is a forensic neuropsychologist who is trained in evaluating medical and other scientific research regarding human behavior including and beyond human interactions with police. Further, as described below, Dr. Goldstein used a sound methodology to reach her opinions. Additionally, her opinions regarding Dr. Leo's methodology and false confessions research are appropriate subjects for her to address and refute given her background and role as a rebuttal witness and do not constitute legal conclusions. Plaintiffs' motion should be denied.

## ARGUMENT

### I. Dr. Goldstein is Qualified to Opine on the Underlying False Confessions Research Employed by Dr. Leo as the Basis for His Opinions.

Plaintiffs argue that Dr. Goldstein is not qualified to testify as an expert on false confessions or police interrogation methods because she is not a social psychologist. (Dkt. No. 283 at 2). However, Dr. Goldstein's report does not offer any expert opinions on the truth or falsity of Plaintiffs' confessions or the interview techniques used by detectives in this case, and she will offer no such opinions at trial. Unlike Dr. Leo, she is not opining that the length of interrogation caused Plaintiffs to falsely confess, or that their age contributed to their likelihood to falsely

---

[1] Plaintiffs do not argue that Dr. Goldstein's expert testimony would not assist the trier of fact in determining a fact in issue, and have therefore waived that argument. *See, e.g., Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (failure to address an argument resulted in "waiver").

confess, or that any mental disability like ADHD or coercion techniques used by police caused Plaintiffs to confess. No expert should be rendering these opinions. Thus, Plaintiffs' argument that Dr. Goldstein is not a "false confessions" expert is a straw man argument put forth as a distraction so that it may be torn down. Rather, Dr. Goldstein's expertise extends far beyond the narrow field of false confessions and includes the topics on which she opined as follows: the ***methodology*** applicable to scientific research on human behavior including Dr. Leo's research and the general research into the field of false confessions. (Ex. 2 at 1). Put another way, Dr. Goldstein's opinion is that the body of social psychology research Dr. Leo relies upon to conclude that certain risk factors caused allegedly "innocent" people to falsely confess is underdeveloped and cannot reliably be applied to particular individuals including the individuals in this case. (*See* Deposition Transcript of Diana Goldstein, attached hereto as Ex. 3, at 82:8-86:10; *see also* Ex. 1 at 73-77 (for Dr. Leo's opinions)). Dr. Goldstein's extensive background, experience, and specialized knowledge as a clinical and forensic neuropsychologist allows her to render these opinions.

Rule 702 allows a witness to be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). In determining whether an expert is qualified, "[t]he question [a court] must ask is not whether an expert is qualified in general, but whether his qualifications provide a foundation for [him] to answer the specific question.'" *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (cleaned up). In making that assessment, "a court should consider a proposed expert's full range of practical experience as well as academic or technical training." *Smith*, 215 F.3d at 718. "Ordinarily, courts impose no requirement that an expert be a specialist in a given field." *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016) (quoting *Gayton*, 593 F.3d at 617)).

Dr. Diana Goldstein is a licensed clinical neuropsychologist with over 20 years of

4

experience in clinical, forensic, and neuropsychology. (*See* CV of Dr. Diana Goldstein, attached hereto as Ex. 4). She obtained both her Master's degree and PhD from The Chicago Medical School in clinical psychology. (*Id.*) Dr. Goldstein is board certified in clinical neuropsychology and completed her post-doctoral fellowship in clinical neuropsychology at the University of Chicago Medical Center. (*Id.*) She has both lectured and taught at various medical schools on the subjects of psychiatry and behavioral neuroscience, including University of Chicago's Pritzker School of Medicine, Rosalind Franklin University of Medicine & Science, and Rush Presbyterian-St. Luke's Medical Center. (*Id.*) Dr. Goldstein is a member of several professional societies, including the American Psychological Association, the National Academy of Neuropsychology, and the Society for Police and Criminal Psychology, and is well published in her field. (*Id.*)

Dr. Goldstein is the president, CEO, and director of neuropsychology at Michigan Avenue Neuropsychologists, which includes neuropsychological and psychological outpatient evaluations and treatments. (*Id.*) She is also the director of neuropsychology for the Isaac Ray Center where she conducts forensic neuropsychological and physiological evaluations and consultations in criminal and civil cases including cases that involve custodial confessions. (*Id.*) Dr. Goldstein has also served as a therapist, psychometrician, and clinical psychologist for several different medical centers and litigation firms, in both treating and consultative positions. (*Id.*) Dr. Goldstein's full range of practical experience as a forensic psychologist in criminal and civil matters coupled with the required academic research training she received to obtain her PhD in clinical psychology provide her the foundation to answer whether the research Dr. Leo relied upon to render his opinions regarding "the psychology of interrogation and confessions" is reliable. (Ex. 1 at 1).

Yet, Plaintiffs contend that Dr. Goldstein has never conducted any research in the field of false confessions before being retained in this case, never published any articles on the subject of

5

false confessions, and never testified in court regarding false confessions, and so she must be deemed unqualified to opine on the validity of the research Dr. Leo utilizes in his report. (Dkt. No. 283 at 6). This argument is flawed for several reasons. First, it is simply untrue that Dr. Goldstein's research into the area of false confessions did not begin until she was retained in this case. Plaintiffs concede that Dr. Goldstein has offered expert opinions in other disputed confession cases in the last three years. (Dkt. No. 283 at 6). Further, Dr. Goldstein testified that she first became familiar with the literature detailing false confession research in a prior case where she authored an expert report. (Ex. 3 at 87:16-88:9). Additionally, never having published articles on a particular subject does not prevent an expert from testifying to that subject. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 720 (7th Cir. 2000) (finding that the "lack of peer review will rarely, if ever, be the single dispositive factor that determines the reliability of expert testimony.").

Moreover, every expert has once upon a time "never testified in court" regarding the subject area they are opining on, just as Dr. Leo once had never testified regarding false confessions. This is no reason to bar Dr. Goldstein's testimony. *See Demouchette v. Dart*, 2012 WL 6568232, at *8 (N.D. Ill. Dec. 14, 2012) ("[T]he issue of whether a court has previously qualified [the proposed expert] as an expert is irrelevant to a determination of whether he has the necessary knowledge, skill, experience, training, or education to qualify him as an expert under Rule 702.")).

Plaintiffs attempt to use *Harris v. City of Chicago*, 14 C 4391, 2017 WL 3142755, at *4 (N.D. Ill. July 25, 2017) as support for their argument that Dr. Goldstein is unqualified to render the opinions she gave in this case is equally unsuccessful. In *Harris,* the plaintiff moved to exclude the testimony of defendants' false confessions rebuttal expert arguing, in part, that defendants' expert was unqualified to rebut Dr. Leo's opinions on false confessions. *Id*. The defendants' expert

6

was a law professor and former federal district court judge who sought to opine that: (1) Dr. Leo's testimony was unreliable because it was based on an unreliable review of the record; (2) Dr. Leo made faulty assumptions regarding the plaintiff's confessions; (3) Dr. Leo could not reliably opine that any psychological technique increased the risk of a false confession; and that (4) Dr. Leo's opinion is based on unreliable science. *Id*. at *3. The court found defendants' rebuttal expert unqualified because he was trained as a legal scholar and federal judge. *Id*. at *4. The court also found that the defendants' expert in *Harris* did "not have **formal training in psychology, sociology, or social psychology** and that he has never conducted scientific experiments in relation to false confessions." *Id*. at *4 (emphasis added). In this case, Dr. Goldstein is a licensed and board-certified clinical neuropsychologist who has offered expert opinions as a forensic psychologist a number of times in criminal and civil cases. Therefore, she clearly has the requisite formal training in psychology that defendants' expert in *Harris* lacked. Dr. Goldstein is a bona fide scientist with a medical degree whose career focuses on observing, analyzing, and treating human behavior. Dr. Goldstein is not offering opinions that dissect the specific risk factors for false confessions that Dr. Leo asserts are present in this case nor is she attacking his review of the record. Unlike *Harris*, Dr. Goldstein practices in the field of forensic neuropsychology and can speak to the methodology Dr. Leo relied upon to conclude that psychological coercion allegedly occurred in this case. The expert in *Harris* had no such qualifications, and therefore the ruling in that case does not control.

A case more instructive on this issue is *Chatman v. City of Chicago*, No. 14 C 2945, 2018 WL 11426158, at *2 (N.D. Ill. Oct. 30, 2018). In *Chatman*, plaintiff moved to bar the testimony of defendants' rebuttal false confessions expert, in part, on the basis that he was a forensic psychiatrist and not specifically a false confessions expert. *Id*. at *2. There, plaintiff advanced a similar argument that defendants' rebuttal expert had no experience or training in false confessions

7

or police interrogations. *Id*. The court found that many of plaintiff's arguments regarding qualifications were based on a comparison of ***their own*** expert's qualifications. *Id*. at *3 (emphasis added). The court explained that "although Dr. Welner and Dr. Russano work in different disciplines, both of their respective fields – psychiatry and psychology – are rooted in the study of human behavior. And Dr. Welner has studied the same fundamental psychological principles that Dr. Russano relies on in her research." *Id*. The court held that defendants' rebuttal expert was therefore qualified to offer the opinions he offered in his expert report, including the similar opinion here that plaintiff's false confessions expert's methodology was unreliable. *Id*. The court also found that the plaintiff's reliance on *Harris* was misplaced as the defendants' rebuttal expert had the requisite training and experience. *Id*. So to here, Dr. Goldstein and Dr. Leo work in different disciplines; however, clinical psychology and social psychology are certainly rooted in the study of human behavior. Therefore, Dr. Goldstein should be allowed to rebut Dr. Leo's methodology.

Predictably, Plaintiffs also argue that Dr. Goldstein's qualifications do not match those of Dr. Leo's, and so she mustn't be qualified to render opinions that rebut Dr. Leo's opinions. However, "experts need not have identical resumes to opine on the same subjects" *Taylor v. City of Chicago*, No. 14 C 737, 2021 WL 12242781, at *8 (N.D. Ill. Dec. 1, 2021) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("[T]here are many different experts, and many different kinds of expertise.."); *see also* 10/30/18 Order, *Chatman v. City of Chicago*, No. 14 C 2945, Dkt. No. 719 (N.D. Ill.) (Lee, J.). The fact that Dr. Goldstein is a neuropsychologist rather than a *social* psychologist does not mean her extensive experience in the field of clinical and forensic psychology won't suffice in this context. *See United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019) ("To give an example, a general physician may, depending on his experience, be

8

qualified to testify about heart conditions regardless of whether he is a licensed cardiologist."). Although Dr. Goldstein's qualifications are not identical to Dr. Leo's, Dr. Goldstein's background and professional experience as a clinical and forensic neuropsychologist give her the expertise to render the opinions she offers in this case.

Therefore, as a forensic neuropsychologist, Dr. Goldstein is qualified to offer the opinion that the social research of false confessions cannot be reliably applied to individuals, as Dr. Leo has done in this case with Plaintiffs and Ms. Griffin. So, it follows, Dr. Goldstein is qualified to offer expert testimony on the research behind false confessions and Dr. Leo's methodology employed in this case. Plaintiffs' motion must be denied.

## II.     Dr. Goldstein Applied a Reliable Methodology to Develop Her Opinions.

Contrary to Plaintiffs' assertions, Dr. Goldstein applied a reliable methodology that is utilized in her field as a PhD and neuropsychologist, including an analysis of applicable scholarly publications, analysis of the field studies utilized, analysis of sample sizes, and utilization of statistics. (Dkt. No. 283 at 2). Specifically, Plaintiffs argue that Dr. Goldstein "does not identify any recognized methodology she used to reach her conclusions. She does not cite any scientific protocol or methodology." (*Id*. at 12). As described below, Dr. Goldstein applied a sound and reliable methodology to reach her opinions in this case.

"Rule 702 requires that the trial judge ensure that any and all expert testimony or evidence admitted is not only relevant but reliable." *Mendez v. City of Chicago*, No. 18-cv-5560, 2024 WL 4661139, at *4 (N.D. Ill. Sept. 20, 2024) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786 (1993)). "Reliability, however, is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796,

9

806 (7th Cir. 2013).

Dr. Goldstein's report does not simply assert a bottom line without any explanation, as Plaintiffs incorrectly suggest. (*See* Dkt. No. 283 at 12). Dr. Goldstein's report explains how and why she reached the opinion that Dr. Leo's methodology based on false confessions research is unreliable. For example, Dr. Goldstein stated in her report that very few field studies have attempted to do what Dr. Leo attempts to do in this case: "to identify in their respective interview transcripts the 'accusatory interview techniques' or other techniques he has personally identified and developed, in order to determine a seemingly causal association between a given technique, of set of techniques, and a false confession." (Ex. 2 at 6). Dr. Goldstein then backed her opinion by citing published authors in the field of false confessions who have conceded the very point she makes: that there have been little empirical studies performed of the type of analysis employed by Dr. Leo in this case. (*Id*.) Unsurprisingly, Plaintiffs fail to point to a single case that states that the use of authoritative sources in the field in which the expert opines is an invalid or unreliable methodology. Plaintiffs also summarily argue, "Dr. Goldstein's ignorance of the field of false confession research – and of social science in general – is also on display when she fails to apply the methodologies generally recognized in social science to reach her conclusions." (Dkt. No. 283 at 14-15). Plaintiffs make this argument without identifying what "social science methodologies" Dr. Goldstein failed to employ. This argument is baseless.

At her deposition, Dr. Goldstein detailed the methodology she relied upon to render her opinions. She testified because she has a PhD degree, which is a research degree, she learned research and design, methodology, and statistics. (Ex. 2 at 76-77, 98). As a result, she has the expertise to review and dissect the research performed in an area such as confessions, which is indirectly related to her field because she studies human behavior. (*Id*. at 98, 100-101). Therefore,

Dr. Goldstein's methodology, in which she employed her research training and statistical knowledge as a forensic neuropsychologist as well as her review of relevant publications as authoritative sources, is sufficiently reliable.

Plaintiffs also argues that Dr. Goldstein's opinions "have not been accepted in the relevant expert community or any other expert community she identifies" (Dkt. No. 283 at 15), while also stating that Dr. Goldstein's "criticisms often simply rehash limitations acknowledged by false confession researchers themselves." (*Id*. at 14). In other words, Plaintiffs concede that many false confessions researchers share Dr. Goldstein's conclusion about the limited applicability of their research in the real world. If Dr. Goldstein is offering opinions that echo limitations that false confessions researchers have already recognized in their field, then arguably her opinions have already been accepted in the relevant expert community. The argument that Dr. Goldstein's conclusions have not been accepted in the field of false confessions is irrelevant but also demonstrably false.

Additionally, at her deposition, Dr. Goldstein testified that she reviewed all of Dr. Leo's published work and the authoritative sources he referenced in his report, as well as performing her own research on false confessions. (Ex. 2 at 87-88). Dr. Goldstein also provided a number of citations throughout her expert report to publications in the field of false confessions and police interrogations. (*See, e.g.,* Ex. 2 at 4 fn. 3-4; at 6 fn. 5-7; at 7 fn. 8-12). Indeed, Dr. Goldstein cites to many of the same authors as Dr. Leo in his report, including Christian Meissner, Saul Kassin, and Dr. Leo himself. (*See id*. *cf.* Ex. 1 at 11 fn. 3, 13-14 fn. 10-12). If these authors and publications serve as reliable authoritative support for Dr. Leo's opinions, then these same sources that admit the pitfalls of the research behind false confessions are reliable enough for Dr. Goldstein to utilize in her report.

Ultimately, Plaintiffs argument that Dr. Goldstein's failure to identify an established methodology or scientific process used to arrive at her opinions is unavailing. Dr. Goldstein is not going beyond the bounds of her field of forensic neuropsychology, but is simply pinpointing the pitfalls in false confessions research and data which directly undermine Dr. Leo's opinions about the risks factors present in and falsity of Plaintiffs' confessions. Dr. Goldstein's opinions are based on her expertise examining human behavior as a clinical and forensic neuropsychologist and her extensive review of authoritative sources, including Dr. Leo's, in the field of false confessions. She should therefore be permitted to rebut Dr. Leo's testimony based on her utilization of a reliable methodology. *See Cage v. City of Chicago*, 979 F. Supp. 2d 787, 824 (N.D. Ill. 2013) ("the fact that an expert's conclusions are based only on his observations and extensive specialized experience does not render them inadmissible"); *Erickson v. Baxter Healthcare, Inc.*, 151 F. Supp. 2d 952, 964 (N.D. Ill. 2001) ("An expert witness may form opinions by studying or observing the work of others rather than through first hand participation.").

### III. Goldstein's Opinions regarding Dr. Leo's Methodology Do Not Invade the Province of the Court.

Plaintiffs' final attack on Dr. Goldstein is to claim that her opinions regarding false confessions research generally are improper legal conclusions. Specifically, Plaintiffs argue that "Dr. Goldstein's opinions are inadmissible for the additional reason that they invade the Court's role when she opines on whether the study of false confessions is based on reliable science." (Dkt. No. 283 at 10). None of Dr. Goldstein's opinions constitute legal conclusions or invade the province of the Court, and so her rebuttal testimony should be allowed.

Plaintiffs attempt to rely on *Chatman* and *Harris* to back their argument that Dr. Goldstein cannot opine on the validity of Dr. Leo's use of false confession research, but this suggestion is patently false. *See Taylor v. City of Chicago*, No. 14 C 737, 2021 WL 12242781, at * (N.D. Ill.

Dec. 1, 2021) (finding that rebuttal expert's critiques of the data and methodology underlying Dr. Leo's opinions were relevant and would assist the jury in determining expert testimony credibility); *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-cv-5836, 2017 WL 2178504, at *10 (N.D. Ill. 2017) (finding that while an expert may not offer the opinion that an opposing expert's testimony would "not help the trier of fact determine the facts at issue" or opine using any other Rule 702 specific language, an expert "remains free to criticize [an opposing expert's] methodology, factual assumptions, and conclusions."); *Simmons v. City of Chicago*, 2017 WL 3704844, at *11 (N.D. Ill. 2017) ("Defendants' expert Judith Roberts may render opinions involving statistical analysis, including criticism of the methodology of plaintiffs' expert Stan Smith; she is qualified to do so, and these opinions are relevant."); *Benedict v. U.S.*, 822 F.2d 1426, 1429 (6th Cir. 1987) ("[I]nsofar as Dr. Goldfield's testimony would have directed to disproving the accuracy of Dr. Nathanson's methodology and data, it was proper rebuttal and should have been allowed."); *In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, 2009 WL 1649773, at * 1 (D. Kan. 2009) ("Plaintiffs apparently contend that only the Court determines the reliability of expert opinion. The substantive reliability question is as much for the jury, however, in the context of courtroom adversary testimony, as it is for the court, in the context of a Daubert hearing. Numerous courts have permitted experts to testify at trial about the reliability of the opinions of opposing experts…"); *see also Harvey v. THI of New Mexico at Albuquerque Care Ctr., LLC*, 2014 WL 12796898, at *4 (D.N.M. 2014) ("[I]t is well settled that experts are permitted to critique each other's methods.").

      Dr. Goldstein is not opining that Dr. Leo's opinions should be excluded as "not the product of reliable principles and methods" pursuant to Rule 702 and *Daubert*, as the courts in *Chatman* and *Harris* found impermissible for an expert to do. Rather, Dr. Goldstein is criticizing the

13

methodology of an opposing expert, which multiple courts have found to be allowable. For example, in *Taylor*, the plaintiff moved to bar defendants' rebuttal false confessions expert, arguing that he was unqualified to opine on false confessions and that many of his opinions were irrelevant and/or would not assist the trier of fact. 2021 WL 12242781, at *8. After finding defendants' rebuttal expert qualified, the court found that three of his opinions critiquing Dr. Leo's methodology were relevant and would assist the jury in determining the experts' credibility. *Id*. Specific to this motion, defendants' rebuttal expert offered opinions on whether Dr. Leo's conclusions were established by a reliable scientific methodology. *Id*. at fn. 6. The court held that defendants' rebuttal expert was allowed to testify regarding "the scientific reliability of Dr. Leo's research and opinions." *Id*.

This court should follow the holdings in *Taylor*, *Angelopoulos*, and *Simmons*, and allow Dr. Goldstein's opinions regarding the scientific reliability of Dr. Leo's research and opinions based on her decades of professional experience as a forensic neuropsychologist and expertise in human behavior and related research.

## CONCLUSION

WHEREFORE, Individual City Defendants respectfully request that this Honorable Court enter an order denying Plaintiffs' motion to exclude the expert testimony of Dr. Diana Goldstein pursuant to Fed. R. Evid. 702, and for any other relief the Court deems just and proper.

Respectfully submitted,

*/s/ Natalie Y. Adeeyo*
Shneur Nathan (snathan@nklawllp.com)
Avi Kamionski (akamionski@nklawllp.com)
Natalie Adeeyo (nadeeyo@nklawllp.com)
Breana Brill (bbrill@nklawllp.com)
John Cerney (jcerney@nklawllp.com)
Special Assistants Corporation Counsel

14

Nathan & Kamionski LLP
206 S. Jefferson Street
Chicago, IL 60661
(312) 957-6639

*Attorneys for Individual City Defendants*

## **CERTIFICATE OF SERVICE**

I, Natalie Adeeyo, an attorney, hereby certify that on January 8, 2025, I caused the foregoing document to be filed with the Court's CM/ECF system, which provided electronic notice and a copy of the same to all counsel of record.

*/s/ Natalie Y. Adeeyo*
